# MATHIAS HELBREG *et al.*

## *v.*

## GUSTAV SCHUMANN *et al.*

### *Filed at Mt. Vernon April 2, 1894.*

1. DEED ABSOLUTE IN FORM—*shown to be a mortgage—by parol evidence.* The law is well settled that a deed absolute on its face may be shown by parol evidence to have been executed to secure the payment of money, when it will be treated, in equity, as a mortgage.

2. The declarations and statements of the parties made pending the negotiations, and at the time of the final execution of a deed and contract, are admissible to show that the deed was taken as a mortgage or security, and the rule that the terms and conditions of a written contract can not be varied by parol evidence does not apply.

3. A gave a mortgage on a tract of land owned by him, and afterward sold and conveyed to B the north half of the same, and failing to pay the mortgage or the interest thereon, the administrator of the estate of the mortgagee filed a bill to foreclose the mortgage. An arrangement was then made that B should pay the costs, etc., and $125 of the debt, and assume payment of the balance due the estate, and A was to convey the south half of the tract to B, who was to mortgage the same to the administrators, and the time of payment was extended, which arrangement was executed, and at the same time B gave to A a contract to reconvey on payment of the mortgage debt and the $125 advanced : *Held,* that the transaction amounted, in equity, to a mortgage from A to B to secure the latter.

4. SAME—*debt secured by the deed.* In such case B was bound to pay A's debt in order to protect his own part of the land, and the debt so assumed, and the payment of the costs of the suit, constituted a debt from A, which might properly be secured by mortgage.

5. INSANE PERSONS—*declaring forfeiture against.* After a person has been adjudged insane, no forfeiture of his contract for a failure on his part to pay certain sums of money, as, an installment of interest and taxes on land, can be declared, except by decree of a court of competent jurisdiction where he is properly represented by a conservator or guardian.

6. SAME—*setting aside a forfeiture.* A declaration of the forfeiture of rights under a contract, after the party affected has been adjudged insane, and the obtaining of possession of the premises to which the contract relates, will be regarded as fraudulent, and will, in a court of equity, be set aside, and the insane person restored to his rights under such contract.

7. Courts of equity will set aside contracts made with insane persons on the ground of fraud. Such persons being incapable, for the want of capacity, to enter into a valid contract or do any valid act, all persons dealing with them with knowledge of this incapacity are regarded as perpetrating a fraud upon them.

APPEAL from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

This was a bill, in the Superior Court of Cook county, to redeem, brought by Mathias Helbreg and Sophia E. Schumann, as conservators of Julius Schumann, an insane person, against Gustav Schumann, Theodor Guenther, Magdalena Von der Heide, and Thomas J. McGrath, trustee.

In 1881, and prior thereto, Julius Schumann was the owner in fee of a tract of land containing fifty-five acres, in Cook county, situated about two miles south of Blue Island, upon which he resided as a homestead. On June 6 of that year Julius executed a trust deed upon the entire tract to secure his note for $2000, payable to one Johann Von der Heide, five years after that date, with six per cent interest, payable annually. Subsequently, he sold the north half of the tract to his brother, Gustav, the latter assuming to pay one-half of the incumbrance just mentioned, or $1000. Gustav discharged his half of the indebtedness, including interest, by July 3, 1882. Julius paid no interest after June, 1882, neither did he ever pay the principal. Johann Von der Heide, the owner of the note, died June 23, 1887. The note passed into the hands of his administrators, Magdalena Von der Heide and Theodor Guenther. Shortly after their appointment as such administrators they demanded payment of the note, and failing to obtain the money, on January 6, 1888, they filed a bill in the Superior Court of Cook county to foreclose the deed of trust, in which Gustav Schumann was joined as a defendant with Julius Schumann.

Prior to January 21, 1888, the administrators of the estate had recovered a judgment, before a justice of the peace,

against Julius Schumann, for $40, and on the date last mentioned there was due the administrators from Julius Schumann, on account of the judgment and on account of the indebtedness secured by the trust deed, $1435. Julius Schumann made an effort to raise the money from several different parties, but failed. Finally, on January 21, 1888, the following arrangement was consummated between him, his brother, Gustav, and the administrators: Julius Schumann and his wife conveyed, by warranty deed, to Gustav Schumann, the fifty-five acre tract of land, for a consideration expressed in the deed of $1450. Gustav Schumann paid the administrators $125 cash, and executed and delivered to them his note for $1310, due in five years, with interest at seven per cent, payable semi-annually, and a trust deed on the fifty-five acre tract to secure payment of the note. At the same time the following agreement was executed by Julius and Gustav Schumann:

"This agreement, made this 21st day of January, A. D. 1888, by and between Julius Schumann and Gustav Schumann, both of the county of Cook, in the State of Illinois, witnesseth:

"Whereas, the said Gustav Schumann is the owner in fee of the north half of the following described property, situated in the county and State aforesaid, to-wit: (here describes the fifty-five acre tract of land,) and the said Julius Schumann is the owner in fee of the south half thereof; and whereas, the said above described property is encumbered by a trust deed, dated the 6th day of June, 1881, executed by the said Julius Schumann to Louis Luchtemeyer, as trustee, to secure the payment of one promissory note of said Julius Schumann, of even date with said trust deed, for the sum of $2000; and whereas, foreclosure proceedings have been commenced and are now pending in the Superior Court of said county by the legal holders of said note, to foreclose said trust deed; and whereas, there is now due to Theodor Guenther and Magdalena Von der Heide, administrators of the estate of Johann Von der

Heide, deceased, the legal holders of said note, and under the provisions of said trust deed, as principal, interest, attorney's fees and costs of said foreclosure suit to date, the sum of $1435, which said sum of money of right should long since have been paid by said Julius Schumann; and whereas, the said Julius Schumann has this day executed and delivered to the said Gustav Schumann a warranty deed conveying the said above described property; and whereas, the said Gustav Schumann has this day caused said trust deed above mentioned to be released, by paying the sum of $125 in cash, and executing and delivering to said Magdalena Von der Heide and Theodor Guenther his promissory note for the sum of $1310, secured by trust deed to Thomas J. McGrath, on the whole of the land above described:

"Now, therefore, it has been and is agreed between the parties hereto, that if the said Julius Schumann shall well and truly pay, or cause to be paid, the said note last above mentioned, so made by the said Gustav Schumann, and the interest thereon, from time to time, promptly, when the same becomes due and payable, together with all taxes and assessments laid, levied or assessed on the south half of the above described land, (time being the essence of this agreement,) then the said Gustav Schumann will, as soon as said indebtedness is fully paid and said trust deed released, on payment of the further sum of $125 to him, together with interest thereon from the date hereof to the time of payment, at the rate of seven per cent per annum, reconvey to said Julius Schumann the south half of the above described property. And it is expressly agreed, that should said Julius Schumann, for any cause, fail to pay the said above mentioned indebtedness secured by said trust deed to said McGrath, together with the interest thereon, or any installment of interest, or the taxes or assessments aforesaid, or any or either of them, promptly, when the same become due and payable, respectively, then this agreement shall be void absolutely, and with-

out any notice to or demand on said Julius Schumann, and all money paid by said Julius Schumann on account of principal, interest, taxes, assessments or otherwise, shall be forfeited to said Gustav Schumann. The possession of said premises shall be and remain in said Gustav Schumann. In case of the death of said Julius Schumann before said south half of said premises are reconveyed to him, as above agreed, then this agreement, and all provisions therein contained, shall be void, but payments made under this agreement, in such case, shall not be forfeited, but shall be paid to the widow or next of kin of said Julius Schumann by said Gustav Schumann.

"In witness whereof, the said parties have hereunto set their hands and seals, on the day and year first above written.

JULIUS SCHUMANN,     [Seal.]<br>GUSTAV SCHUMANN.    [Seal.]"

At the date of the above transaction Julius Schumann was residing on the south half of the fifty-five acre tract, and he continued to occupy the land until July 17, 1889, when he was taken before the county court of Cook county on a complaint that he was insane, and on a trial before a jury he was adjudged insane and placed in the Cook county insane asylum, where he still remains. Schumann's wife continued to reside on the premises until December, 1889, when Gustav Schumann demanded possession of the premises, and threatened to remove her with an officer, and she finally left and Gustav went into possession of the property, which he still retains.

The bill was filed March 18, 1891, and subsequently an amended bill was filed, in which, among other things, it is alleged "that the said warranty deed from orator and his wife to said Gustav Schumann, although appearing on its face to be absolute, was not intended to be such by orator and said Gustav Schumann, but, on the contrary, it was expressly agreed and understood between them, at and before orator signed the same and gave the same to Gustav Schumann, that the same, and the south half of the premises thereby purport-

ing to be conveyed, were to be held by said Gustav Schumann simply as security for the payment of the said sum of $125, paid by said Gustav Schumann to said Theodor Guenther and Magdalena Von der Heide, as aforesaid, and interest thereon at the rate of seven per cent per annum, and as security for any taxes levied or assessed against the south half of said fifty-five acre tract, and paid by Gustav Schumann, and to indemnify said Gustav Schumann from loss or damage to him arising from the execution by him of the $1310 note, secured by the trust deed to McGrath, and the interest thereon, and that upon payment by orator of said $125, and interest thereon at seven per cent from January 21, 1888, to the date of such payment, and of all such taxes levied or assessed on the south half of said fifty-five acre tract, and all money paid by Gustav Schumann on said $1310 note, and upon payment of said $1310 note, or upon said Gustav Schumann being indemnified from all loss because of his execution of said $1310 note, or the trust deed securing the same, said Gustav Schumann should reconvey to orator the south half of said fifty-five acre tract by an absolute deed of conveyance, in fee simple."

The bill also contains the following: "That orator is ready and willing and offers to pay to Gustav Schumann said $125, and interest thereon at seven per cent from January 21, 1888, and all the interest paid by Gustav Schumann on said $1310 note, and all taxes paid by him, and orator offers to pay said $1310 note, both principal and interest, or in case the legal holder thereof refuses to accept payment thereof, orator offers to pay into this court the whole of the principal and interest due or to become due thereon, and to secure said Gustav Schumann by bond, with security to be approved by this court, against all loss and injury caused by his having signed or executed said $1310 note, or the trust deed securing the same." It is also alleged in the bill, that at the time of the execution of the deed, prior thereto, and ever since, Julius Schumann was insane.

2—150 ILL.

Mr. JAMES E. MONROE, for the appellants:

Parol evidence of the facts and circumstances, including the conversations and negotiations between Julius and Gustav Schumann, and admissions by the latter, leading up to the execution of the warranty deed and agreement in writing, is competent to prove that those instruments were intended as a security for money, only, and therefore are a mortgage. *Russell* v. *Southard,* 12 How. 139; *Tillson* v. *Moulton,* 23 Ill. 656; *Darst* v. *Murphy,* 119 id. 343; *Ennor* v. *Thompson,* 46 id. 215; *Preschbaker* v. *Feaman,* 32 id. 480.

While it is true that there can not be a mortgage without a debt, to secure which the mortgage is given, it is also true that there need be no express promise or covenant by the mortgagor to pay the debt. The court may imply the promise from the transaction. And where the money advanced by the grantee in an absolute deed was advanced as the result of a treaty or negotiation for a loan by the grantee to the grantor, but by an express agreement the parties gave the transaction the form of a sale and agreement to sell back the property in order to avoid costs or trouble of a foreclosure, the court will hold the transaction to be a lending upon security, especially if the grantor remain in possession as owner. *Flagg* v. *Mann,* 2 Sumn. 490; *Russell* v. *Southard,* 12 How. 139.

The overwhelming weight of authority is to the effect that the absence of a personal obligation to repay the money furnishes no conclusive test to determine whether the conveyance is a mortgage, or a sale with the right to repurchase. While the rights of the parties must be mutual and reciprocal, all that is required is, that the mortgagee shall have the right to foreclose whenever the mortgagor has the right to redeem. There need be no right of the mortgagee to recover the money loaned from the mortgagor personally. *Niggeler* v. *Maurin,* 34 Minn. 118; *Marshall* v. *Thompson,* 39 id. 138; *Matthews* v. *Sheehan,* 69 N. Y. 591; *Brown* v. *Dewey,* 1 Sandf. Ch. 56.

Where an absolute conveyance is made, and at the same time the grantee gives the grantor an agreement to reconvey to him upon the repayment of the consideration for the conveyance, with interest, the two instruments, in themselves, constitute a mortgage, although the grantor does not covenant or agree to pay back the consideration, or the interest thereon. *Preschbaker* v. *Feaman,* 32 Ill. 484; *Carr* v. *Rising,* 62 id. 18; *Murphy* v. *Calley,* 1 Allen, 107; *Woodward* v. *Pickett,* 8 Gray, 617; *Bailey* v. *Bailey,* 5 id. 505; *Rich* v. *Rice,* 4 Pick. 349; 1 Jones on Mortgages, 250.

The warranty deed having been made as a security for money advanced and to be advanced, is a mortgage, and the provisions of the written agreement for a forfeiture of the interest of the grantor in case of default in making payment of the debt, interest and taxes, are void, as clogs upon the exercise of the right of redemption. There is no such thing as an irredeemable mortgage. The maxim, once a mortgage always a mortgage, applies. 1 Jones on Mortgages, sec. 250; *Preschbaker* v. *Feaman,* 32 Ill. 484.

A contract made by an insane person with a person having knowledge of his insanity, is voidable, on the ground of fraud. 1 Story's Eq. Jur. (10th ed.) secs. 227-229; 2 Pomeroy's Eq. Jur. secs. 946, 947; *Enckings* v. *Simmons,* 28 Wis. 273.

Messrs. HOFHEIMER, ZEISLER & MACK, for the appellees:

There can be no mortgage without a debt. *Freer* v. *Lake,* 115 Ill. 662; *Rue* v. *Dole,* 107 id. 275.

There must be a continuing, valid debt secured by it, which may be enforced in an action at law, or the deed is not a mortgage. *Freer* v. *Lake,* 115 Ill. 662; *Sutphen* v. *Cushman,* 35 id. 186; *Fisher* v. *Green,* 142 id. 80; *Wilson* v. *McDowell,* 78 id. 514; Pomeroy's Eq. Jur. sec. 1195, note 1.

A deed absolute on its face will be presumed to be what it purports to be,—an absolute conveyance. The party claiming it to be a mortgage must sustain his claim by clear, satisfac-

tory and convincing proof. *Hartnett* v. *Ball,* 22 Ill. 43; *Hancock* v. *Harper,* 86 id. 445; *Bartling* v. *Brasuhn,* 102 id. 441; *Eames* v. *Harding,* 111 id. 634; *Clark* v. *Finlon,* 90 id. 245; *Bailey* v. *Bailey,* 115 id. 551; Pomeroy's Eq. Jur. sec. 1195, note 1.

Insanity, sickness or other incapacity of the insured, will not be accepted as an excuse for not paying, on the appointed day, the premium provided by a life insurance policy. *Klein* v. *Insurance Co.* 104 U. S. 88; *Wheeler* v. *Insurance Co.* 82 N. Y. 543; *Thompson* v. *Insurance Co.* 104 U. S. 252; *Carpenter* v. *Insurance Co.* 68 Iowa, 453.

Where, through inevitable accident, the performance of a condition imposed by the contract, and not merely by law, becomes subsequently impossible, such accident will not excuse the non-performance. 5 Lawson on Rights and Remedies, p. 4171, sec. 2520, note 6.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The Superior Court referred the cause to the master in chancery to take the evidence, and report his conclusions as to both law and fact. The evidence was taken and a report filed, in which the master, among other things, found that the warranty deed from Julius Schumann to Gustav Schumann, and the agreement providing for a conveyance, constituted a mortgage, and that complainant was entitled to redeem. Numerous exceptions were filed to the report, a part of which was sustained, a part overruled and a portion remained undecided, and a decree was rendered dismissing the bill. It will not, however, in the view we take of the case, be necessary to go over the different exceptions in detail. We will therefore content ourselves with considering the questions presented by the record, which must control the decision of the case.

It is claimed, on the one hand, that the transaction wherein Julius Schumann conveyed the land to Gustav Schumann and executed a contract to reconvey, amounted to a purchase

by Gustav Schumann and a contract to re-sell, while, on the other hand, it is claimed that the transaction was a mortgage. Parol evidence was introduced for the purpose of showing the intention of the parties at the time the arrangement was consummated. The law is well settled, in a case of this character, that resort may be had to parol evidence to establish the intention of the parties. (*Preschbaker* v. *Feaman,* 32 Ill. 481; *Ennor* v. *Thompson,* 46 id. 220; *Darst* v. *Murphy,* 119 id. 343.) The declarations and statements of the parties, made pending the negotiations and at the time of the final execution of the deed and contract, are admissible, and the rule that the terms and conditions of a written contract can not be varied does not apply to such evidence. The law is well settled that a deed absolute on its face may be shown, by parol, to have been executed for the payment of money, when it will be treated, in equity, as a mortgage. *Miller* v. *Thomas,* 14 Ill. 430.

The warranty deed from Julius Schumann to Gustav Schumann, and the contract for a reconveyance, and the note and trust deed given by Gustav Schumann to the administrators of the estate of Johann Von der Heide to secure $1310, were all executed at the same date, in pursuance of the same agreement, and they are all a part of the same transaction, and "they must be taken together as constituting one entire arrangement" or contract. When they are all considered together as one contract, in connection with the circumstances under which they were executed, we are inclined to the view that but one construction can be placed on the transaction, and that is, that it was a mortgage. Julius Schumann was indebted to the administrators of the estate of Johann Von der Heide in a certain sum of money. This was secured by a mortgage on his land and the land of Gustav, his brother. A bill was filed to foreclose the mortgage. If a decree should be rendered, Gustav's land was liable to be sold in payment of the debt, and he had no indemnity or security of any character from Julius to make him whole. He was therefore in-

terested to have some arrangement made under which he could be secured. The administrators agreed to extend the time of payment, and take a new note and mortgage on all the land for the debt, the interest to be increased from six to seven per cent, and the costs paid. In order that Gustav might make the mortgage and at the same time be secure, Julius conveyed the land to him, and he executed a note and mortgage for the debt, and then gave Julius a contract to re-convey, providing he paid the mortgage debt, interest and the $125 advanced by Gustav, from his own funds. This, in brief, was the transaction, and when analyzed it amounts merely to this: that Gustav Schumann assumed the mortgage debt which Julius Schumann owed the administrators, and the latter, in order to secure Gustav, conveyed him his half of the land, under an agreement that the land should be re-conveyed upon payment of the debt, interest and costs. The agreement for a reconveyance contains no provision or recitation that Gustav Schumann has sold the land to Julius Schumann. It merely provides, after reciting the facts under which Gustav Schumann obtained the title, that if Julius Schumann paid as therein provided, then Gustav should reconvey to him.

George W. Bowman, who filed the bill to foreclose the deed of trust for the administrators of the estate of Johann Von der Heide, deceased, testified that "about ten days after the bill was filed, Gustav Schumann, in company with his brother, Julius Schumann, called at my office in Blue Island. Gustav said they came for the purpose of seeing whether they could not make some arrangement for an extension of the loan and a settlement of the then pending suit. Gustav Schumann in-formed me at that time that he was going to help his brother out, and that he would advance him sufficient money to make a payment on this indebtedness secured by the trust deed which we were then foreclosing. He desired to know whether I could help them to make a settlement. I told him I could only take full payment of the debt, and advised him to see

the administrators. He said he would, and they left. They returned the same evening, and Gustav informed me that Mr. Guenther had told them that if they paid all the costs in the suit then pending, and the attorney's fees, and made a new note and trust deed covering the entire property, for what was then due, and included in that note a judgment recovered against Julius by the administrators, and increased the interest from six to seven per cent, he would give them an extension of time. He inquired the amount of the costs. He then asked me what kind of security he would be able to get for his money which he was about to advance. I told him that he could obtain a second mortgage on Julius Schumann's share. A few days after that Gustav came to see me again. He then informed me that he was dissatisfied with the arrangement of obtaining a second mortgage on his brother's interest. He said that he doubted very much whether his brother would ever pay that indebtedness, and he did not want to be put to the expense of a foreclosure suit in case his brother made default. Then it was for the first time that we discussed together the question of making an absolute deed from Julius Schumann and his wife to Gustav, and a trust deed back from Gustav to secure the Von der Heide indebtedness, and the giving by Gustav to Julius of a contract to reconvey to him the property, to be deeded by him to Gustav in case Julius made the payments as provided in the trust deed to be given to secure the Von der Heide indebtedness, and also this indebtedness for the money to be advanced by Gustav. The result of that conversation was, that within a short time I drew up the contract (the contract here involved.) A day was set for the execution of the papers. On the day fixed, Gustav Schumann came to the office, I think somewhere about seven o'clock in the evening. He informed me that the parties would be there in a short time. He asked me whether I had the contract drawn up from him to Julius. I told him I had. He told me to be sure to make the provisions in that contract stringent,

because he did not want to have any trouble of a foreclosure suit in case his brother did not pay promptly when he ought to pay." After detailing the fact of the execution of the warranty deed, the contract for a reconveyance, and the new trust deed, the witness further testified: "I never proposed to Gustav Schumann that he should buy any portion of Julius Schumann's land involved in this suit. The question of his buying any portion of the land, or the whole of it, never came up in my presence. The question of a sale of that land to him was never discussed."

This witness was entirely disinterested, and was in a position to know and understand the facts connected with the transaction better than any other person. He was familiar with all that was said and done from the inception of the transaction until its final consummation, resulting in the execution of the papers, and we think much reliance should be placed on his evidence.

From the evidence of this witness, and from the papers that were executed, it seems plain that the transaction was a mortgage. If Julius Schumann sold the land to his brother, no necessity existed for the execution of a contract providing for a reconveyance containing stringent provisions as Gustav insisted should be inserted in the contract. If the evidence of this witness be true, a sale of the property was never mentioned or discussed. Gustav Schumann, in order to protect his own property, which was embraced in the deed of trust to the administrators, concluded to assume the indebtedness, and as security the deed was made to him. When the negotiations first commenced, the understanding was that a second mortgage should be given, but finally finding Julius would not pay promptly, the deed was made to save the trouble and expense of a foreclosure in case there was a default in payment.

But it is said there was no debt to be secured, and there can be no mortgage in the absence of a debt, and in support of this position *Rue* v. *Dole*, 107 Ill. 275, and *Fisher* v. *Green*,

142 id. 80, and other like cases, are cited.  If there was no other evidence in this case but the warranty deed and the contract to reconvey, there might be much force in the position of counsel; but when the other evidence in the record is considered in connection with the deed and contract, a different question is presented.  When all the evidence is considered, it can not be said there was no debt to be secured.  Gustav Schumann paid the costs on the suit brought by the administrators to foreclose their deed of trust, amounting to $125, and assumed the payment of the mortgage debt, amounting to $1310.  The deed was made by Julius to Gustav Schumann as security for these two items, and the plain import of all that was done is, that Julius Schumann was to pay those sums, and interest.  There was, therefore, a debt, which might properly be secured by mortgage.

It is also insisted that Julius Schumann failed to pay, as required by the contract, and hence a specific performance of the contract can not be decreed.  The note for $1310 which Gustav Schumann executed and delivered to the administrators, was payable five years after date, with interest payable semi-annually.  At what time the $125 should be repaid does not seem to be specified.  Julius Schumann failed to pay the interest that became due on July 21, 1888, and January 21, 1889, and also taxes on the land, but no forfeiture of the contract was declared, nor was any attempt made to terminate the contract on account of this failure.  On the 18th day of July, 1889, before another installment of interest became due, he was adjudged insane, and his failure to pay interest or taxes after that date would not authorize Gustav Schumann to declare a forfeiture of the contract, unless done by decree of a court of competent jurisdiction, where the insane person was properly represented by conservator or guardian.  Courts of equity will set aside contracts made with insane persons, on the ground of fraud.  Insane persons being incapable, for the want of capacity, to enter into a valid contract or do any

valid act, all persons dealing with them with knowledge of their incapacity are regarded as perpetrating a fraud upon them.   1 Story's Eq. Jur. sec. 227.

In *Encking* v. *Simmons*, 28 Wis. 273, where a mortgage with power of sale was foreclosed, under the power of sale contained in the mortgage, after the mortgagor had become insane, it was held that the sale should be set aside for fraud. In the opinion it is said: "In equity the proceeding was fraudulent, and the sale will be set aside, whether the mortgagee knew of the mortgagor's insanity or not.   This will always be done where it is for the benefit of the person *non compos mentis*, and where injustice will not thereby be done to the other parties to the transaction, or they can be placed *in statu quo*.   No injustice will be done here.   The plaintiff (the purchaser at the sale) will be entitled to the redemption money so far as that goes, and for the rest he has the bond or covenant of the mortgagor for repayment.   The mortgagee will have the full amount of his debt and interest, which is all he can require.   The parties may be placed *in statu quo*.   In equity this seems to fall within the third kind of fraud enumerated by Lord Hardwicke in *Chesterfield* v. *Janssen*, 1 Lead. Cas. in Eq. 472, namely, fraud which must be presumed from the circumstances of the parties, and which goes farther than the rule of law, which is, that it must be proved, not presumed. But it is wisely established in the court of chancery to prevent taking surreptitious advantage of the weakness or necessity of another, which knowingly to do is equally against conscience as to take advantage of his ignorance."   So here, the attempted forfeiture by demanding and obtaining possession of the premises from the wife of Julius Schumann, after he had been adjudged insane, must be regarded as fraudulent, and we think complainant, on making full payment of all moneys agreed to be paid, and interest and taxes, was entitled to relief, in equity.

The decree will be reversed and the cause remanded.

*Decree reversed.*