(No. 14605.—Decree affirmed.)

Harry A. DeVoigne *et al.* Plaintiffs in Error, *vs.* The Chicago Title and Trust Company *et al.* Defendants in Error.

*Opinion filed June 21, 1922—Rehearing denied October 6, 1922.*

1. Mortgages—*when deed with trust agreement creates a mortgage—sale of equity.* A deed and trust agreement executed at the same time, with the intention of securing the obligations of the grantors to certain contractors who were improving the premises, create a mortgage, where the trust agreement contains a provision for a re-conveyance upon payment of the obligations within the time limited, but, under the statute to prevent sales of the equity of redemption, provisions of the trust agreement that the trustee may sell the property and that the grantors shall vacate in case of a sale are void.

2. Same—*an existing debt or obligation is essential to a mortgage.* A mortgage is a security for a debt, and while it is not essential that a mortgage contain a promise to pay the debt, there must be such an existing debt or obligation as the grantee in the conveyance can enforce by a foreclosure.

3. Same—*effect where a mortgage debt is canceled by a later agreement.* A trust deed executed for the purpose of securing the obligations of the grantors to certain contractors who were improving the premises will become absolute where, by a subsequent agreement, all indebtedness of the grantors is canceled and all beneficiaries of the trust agreement agree to take an interest in the proceeds derived from a sale of the property by the trustee, who is declared to be vested with the title for that purpose.

304—12

Writ of Error to the Superior Court of Cook county; the Hon. Charles M. Foell, Judge, presiding.

William A. Jennings, for plaintiffs in error.

Butz, von Ammon & Marx, for defendant in error Hugo G. Peterson.

Culver, Andrews & King, for other defendants in error.

Mr. Justice Cartwright delivered the opinion of the court:

The plaintiffs in error, Harry A. DeVoigne and Vera C. DeVoigne, his wife, filed their bill in equity in the superior court of Cook county alleging that prior to July 13, 1920, they were owners, as joint tenants, of lot 11, in block 31, in Oxford addition to Kenilworth, in Cook county; that they never conveyed the same to the Chicago Title and Trust Company or anyone else, but they executed a deed which purported to convey the same to that company pursuant to the terms of a trust agreement; that the deed and agreement were security for certain payments to be made by the complainants; that they were in default of the payments required by the trust agreement and the title and trust company had attempted to sell their interest in the lot at public auction on December 9, 1921, and accepted a bid of $20,600 from Hugo G. Peterson and received earnest money thereon and was about to execute a deed to him for the lot; that the title and trust company had recovered a judgment in forcible entry and detainer against the complainants for the possession of the lot, and that they notified Peterson at the time of the sale that the title and trust company had no right to sell the property. The title and trust company and Peterson were made defendants, and by order of court contractors whose debts were secured by the agreement were made defendants. The bill prayed for

an injunction against the enforcement of the judgment and against disturbing the complainants in their possession and enjoyment of the property. The Chicago Title and Trust Company answered the bill, admitting the execution of the deed and the trust agreement, claiming the right to sell the property by virtue thereof, setting up two subsequent agreements for a sale, and alleging that the complainants were occupying the property by sufferance and not by right, and also filed a cross-bill. The contractors as to whom payments were secured by the trust agreement answered setting up their rights, and Peterson by his answer asked relief by way of cross-bill. The court dismissed the complainants' bill for want of equity, and decreed that the defendant Peterson, upon payment of the balance of the purchase price of the lot, should be entitled to possession, which the complainants should deliver within thirty days, and the complainants should pay rent for the premises at $350 per month from December 9, 1921, until possession should be surrendered to the Chicago Title and Trust Company. The record is in this court as a return to a writ of error.

It was agreed that the judgment in forcible entry and detainer before the justice of the peace should be abandoned and no claim was to be made of any right to enforce it.

The facts on the issue submitted to the court were agreed upon and are as follows: The complainants were the owners of the lot in question as joint tenants and began the construction of a dwelling house on the same. They entered into contracts with contractors for the erection and completion of the house but were unable to pay for the work as it progressed. They borrowed $15,000 from the Highland Park Trust and Savings Bank and executed a trust deed on July 1, 1920, to the State Bank of Chicago as trustee to secure payment of the same. The contractors had refused to continue the construction unless they were secured, and on July 13, 1920, the complainants for that purpose executed and delivered to the Chicago Title and Trust

Company, as trustee, a warranty deed conveying the premises. At the same time the Chicago Title and Trust Company executed and delivered to the complainants a declaration of trust, reciting that the complainants had borrowed from the Highland Park Trust and Savings Bank $15,000 and had given a first mortgage or trust deed on the premises and the proceeds of the loan were turned over to the Chicago Title and Trust Company. Under the deed and trust agreement the Chicago Title and Trust Company was given full power to sell and convey, mortgage, pledge, lease, partition or exchange the property and to deal with it as owner in every respect. The interest of each and every beneficiary thereunder, and of all persons claiming under them, was declared to be personal property and to be in the earnings, avails and proceeds arising from the disposition of the premises, the intention being to vest in the Chicago Title and Trust Company the entire legal and equitable title in fee. The trust agreement provided that it should not be recorded; that the trustee was the sole owner of the real estate, with power to deal with it as its own, but it provided that if the complainants should pay or cause to be paid the balance due the contractors after the application of the remains of the proceeds of the loan from the bank within sixty days after the completion of the improvements, the trustee should re-convey the property to them subject to the incumbrance of $15,000. If such payments were not made within that time, the trustee, after giving notice to all parties, should sell the land at public auction to the highest and best bidder subject to the lien of $15,000, and no bid should be accepted for less than $20,000 for the equity of the complainants. If the property should be sold the complainants were to vacate upon demand, and until said time they might occupy the premises and be treated as tenants at will. Each of the contractors waived mechanics' liens both as to the loan from the bank and the trust agreement, and the terms, time and payment of amounts

due and to become due.   The complainants turned over
$13,500 of the money borrowed from the bank to. apply
on debts to the contractors.   The building was completed
on February 16, 1921, and the complainants have occupied
it since that time paying no rent, and the rent has been worth
$350 per month.   Another instrument was executed by the
complainants and contractors on July 18, 1921, requesting
and authorizing the Chicago Title and Trust Company to
sell the property at public auction on September 15, 1921,
at ten o'clock, at the judicial sales rooms of the Chicago
Real Estate Board, 57 West Monroe street, Chicago, but
in case the beneficiaries should all of them jointly sign an
order and direction to sell the property at private sale to a
particular person for a specified price the trustee was to
sell to such purchaser as directed.   The instrument provided
the notice to be given of an auction sale, and declared the
interest of the beneficiaries, respectively, to be an interest
in the proceeds derived from the sale, stating amounts due
to each, respectively.   The contractors agreed to join in
an order directing a private sale before September 15 if
the complainants should furnish a customer for the prop-
erty at a price sufficient to yield at least $20,000 above the
incumbrance of $15,000.   In case of sale the complainants
agreed to vacate the premises promptly, and it was stated
that the agreement superseded the provisions of the decla-
ration of trust.   In August, 1921, a foreclosure suit was
begun by the Highland Park Trust and Savings Bank, al-
leging default in the payment of interest on its loan and
taxes.   At the request of complainants the sale was ad-
journed from September 15 to September 25 to permit them
to obtain a purchaser.   On September 25, having obtained
no purchaser, they requested that the sale be again post-
poned, and the sale was adjourned by the consent of all
parties.   On September 23, 1921, the complainants and con-
tractors executed a further instrument reciting that the auc-
tion sale set for September 15, 1921, had been postponed

until September 25, 1921, and it was agreed that it be again postponed until November 25, 1921. It was agreed that all indebtedness owing by the complainants, or either of them, to any of the other beneficiaries secured by the trust deed had been and was thereby canceled and extinguished, and in consideration of such cancellation and extinguishment it was agreed that the several parties should have an interest in the proceeds derived from a sale of the property and in the funds then on hand under the trust, in the several amounts specified, giving the amounts due contractors and Harry DeVoigne "the balance." The trustee was declared to be vested with the title to the property, and there were further agreements that the land should be sold, contractors paid and the proceeds disposed of as stated. On November 24 complainants made a further request for additional two weeks to see if they could get a purchaser instead of having an auction sale, and by consent the sale was again adjourned to December 9. All parties then appeared and the property was offered at public sale, subject to the $15,-000 trust deed, interest and taxes. Hugo G. Peterson bid $20,600, which was the highest and only bid. The complainants by their solicitor then notified all parties that the trust company had no power to make the sale and that the documents amounted to a second mortgage. The bid of Peterson was accepted, and he was ready, able and willing to pay the balance and did make a payment of earnest money. The complainants refused to deliver possession. All the parties endeavored at all times to co-operate with complainants to procure a purchaser for $20,000 or more, and it was agreed that the rental value of the property was $350 a month, and had been such since the sale on December 9, 1921.

The deed and trust agreement were executed at the same time, related to the same subject matter and were parts of the same transaction. They were intended to secure obligations of the complainants to the contractors, and the trust

agreement contained a provision for a re-conveyance upon payment of the obligations within the time limited. They were intended as a mortgage and created a mortgage. (*Helbreg* v. *Schumann*, 150 Ill. 12; *Jackson* v. *Lynch*, 129 id. 72; *Cassem* v. *Heustis*, 201 id. 208.) By the act of 1879 it was provided that no real estate should be sold by virtue of any power of sale contained in any mortgage, trust deed or other conveyance in the nature of a mortgage, executed after the act took effect. (Laws of 1879, p. 211.) The statute was passed to prevent sales of the equity of redemption, and no scheme or device to evade the statute or circumvent it by providing for a sale depriving the debtor of his equity of redemption will be upheld. The provisions of the trust agreement that the trustee might sell the lot and in case of sale the complainants should vacate upon demand were void. The deed took effect from delivery and its character as fixed by the trust agreement was then established, and it would continue to be a mortgage until the right of redemption should be barred in some of the modes recognized by the law. (*Bearss* v. *Ford*, 108 Ill. 16.) It is asserted that the only mode recognized by the law for barring the right of redemption where the nature of a deed appears in a written agreement is a regular foreclosure, release or satisfaction, and that was stated in *Maxfield* v. *Patchen*, 29 Ill. 39. It is true as far as the record is concerned, but in this case the trust agreement was not to be recorded, and, in any case, neither recording a mortgage nor a release or satisfaction affects the security as between the parties to the instrument. The question here involves nothing concerning the state of the record.

A mortgage is a security for a debt, and while it is not essential that a mortgage should contain a promise to pay the debt, there must be such an existing debt or obligation as the grantee in the conveyance can enforce by a foreclosure. (*Freer* v. *Lake*, 115 Ill. 662; *Fisher* v. *Green*, 142 id. 80; *Crane* v. *Chandler*, 190 id. 584; *Caraway* v.

*Sly,* 222 id. 203; *Friend* v. *Beach,* 276 id. 397.) If nothing further had been done after the execution of the deed and trust agreement no power of sale could have been exercised and a foreclosure would have been necessary, but a debt may be canceled and payment abandoned and a deed treated as an absolute conveyance although originally intended as a mortgage. *West* v. *Reed,* 55 Ill. 242; *Carpenter* v. *Carpenter,* 70 id. 457; *Seymour* v. *Mackay,* 126 id. 341; *Scanlan* v. *Scanlan,* 134 id. 630; *Cramer* v. *Wilson,* 202 id. 83; *Hutchison* v. *Page,* 246 id. 71.

The instrument of July 18, 1921, requested the Chicago Title and Trust Company to sell the property at public auction on September 15, provided for notice, and in case of sale complainants agreed to vacate the premises promptly. We cannot say that this was a satisfaction of the mortgage or that the right of redemption was barred by it. It provided that the provision of the trust agreement was superseded by it, but it was in the nature of an evasion of the statute and an attempt to waive any equity or right of redemption. By the agreement of September 23, 1921, all indebtedness at any time owing by the complainants, or either of them, to any of the other beneficiaries was canceled and extinguished. There remained no debt to be paid for the purpose of redeeming the property with a right to compel a re-conveyance upon such payment, and there would be no right of foreclosure fixing any amount to be paid and providing for a sale with the right of redemption. The contractors whose claims were secured precluded themselves from claiming any indebtedness to them or either of them, and the deed then became an absolute conveyance of the lot to a trustee, to be sold and the proceeds distributed as agreed upon.

The decree is affirmed.                *Decree affirmed.*