**SUTLIFF, INCORPORATED, Debtor, Ellingsen-MacLean Oil Company, Land O'Lakes Inc., and Thomas S. Utschig, Trustee, Plaintiffs-Appellants,**

v.

**DONOVAN COMPANIES, INC., Kenneth Kamp, Garrow Oil Corporation, and William Garrow, Defendants-Appellees.**

Nos. 83–1308, 83–1499.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1983.

Decided Feb. 9, 1984.

William J. Holloway, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for plaintiffs-appellants.

D. Jeffrey Hirschberg, Whyte & Hirschboeck, Milwaukee, Wis., Joseph J. Shiff, Sigman, Shiff, Janssen, Stack & Wenning, Appleton, Wis., for defendants-appellees.

Before ESCHBACH, POSNER, and COFFEY, Circuit Judges.

POSNER, Circuit Judge.

This appeal, which raises both procedural and substantive questions, the latter under RICO (Racketeer Influenced and Corrupt Organizations, Title IX of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961–1968) and the Sherman Antitrust Act, 15 U.S.C. §§ 1–11, grows out of a dispute among five oil wholesalers in Appleton, Wisconsin: on the plaintiff side Sutliff, Inc., now bankrupt, and two of its creditors, Ellingsen and Land O'Lakes; on the defendant side the Donovan and Garrow companies. (The three individual parties appear to be incidental.) Since the district court dismissed the plaintiffs' complaint for failure to state a claim, Fed.R.Civ.P. 12(b)(6), and no affidavits were filed in support of the motion, we must take the facts alleged in the complaint to be true for purposes of deciding this appeal (though, needless to say, we do not vouch for their truth), and they show the following:

Sutliff, Inc. was operated by Mrs. Sutliff, a middle-aged woman of no relevant education or training, out of her kitchen, and had total sales of about $2 million a year on which the Sutliffs netted $36,000 between them (Mr. Sutliff drove a truck for the firm). The company got into financial trouble, precipitating Mrs. Sutliff into "a state of hysteria, physical and mental exhaustion . . ., a state of substantially diminished mental responsibility, panic and fear. . . ." Donovan and Garrow took advantage of her mental state to persuade her to sell them oil below cost, which they resold at a profit, but below the market price, in competition with Ellingsen and Land O'Lakes. Sutliff, Inc.'s sales zoomed in one year to $59 million. Donovan and Garrow knew that by dealing with Sutliff on this basis they were driving it to inevitable ruin but they hoped to and did escape the consequences. The small cash advances they made to Sutliff persuaded Ellingsen and Land O'Lakes that Sutliff was solvent (an impression reinforced by an express representation to this effect that Garrow made to Ellingsen), so they continued to extend credit to it and were left holding the bag when the company finally collapsed. The plaintiffs describe this scheme of milking a company dry and leaving its creditors with uncollectible accounts receivable as a "bust-out," on which see, e.g., *United States v. Crockett*, 534 F.2d 589, 592 (5th Cir.1976), and contend that when the perpetrators of a bust-out use the mails and telephone, as Donovan and Garrow are alleged to have done, they have committed federal mail and wire fraud, which are among the crimes that the RICO statute defines as "racketeering" offenses. The complaint also describes the scheme as predatory pricing and price fixing, conduct forbidden by the Sherman Act, and contains several pendent claims under Wisconsin law.

When the district judge dismissed the complaint for failure to state a claim, he also denied the plaintiffs' motion to file an amended complaint. Within ten days the plaintiffs moved for reconsideration of both orders, but becoming anxious lest it not be considered a proper Rule 59(e) motion to alter or amend the judgment they also filed a notice of appeal from the order dismissing the complaint. The district judge, who had not yet acted on the motion for reconsideration when they filed the notice of appeal, held that the notice divested him of jurisdiction to consider the motion, which he therefore dismissed. The plaintiffs then filed another notice of appeal.

■ The motion was a perfectly good Rule 59(e) motion, though not captioned a motion to alter or amend judgment. (Why litigants precipitate unnecessary legal issues by miscaptioning their Rule 59(e) motions baffles us—but many do. See, e.g., *A.D. Weiss Lithograph Co. v. Illinois Adhesive Products Co.*, 705 F.2d 249 (7th Cir. 1983) (per curiam).) Obviously the plaintiffs wanted the judge to vacate his judgment of dismissal, and vacation is a form of alteration. *Id.* at 250. The plaintiffs say they were made uncertain about this by our decision in *Western Transportation Co. v. E.I. Du Pont de Nemours & Co.*, 682 F.2d 1233, 1236 (7th Cir.1982), which held that not all post-judgment motions filed within ten days of judgment are Rule 59(e) motions. That of course is true: a motion for an extension of time to file a Rule 59(e) motion, which is what the motion in the *Western Transportation* case was in effect, cannot be a Rule 59(e) motion, *Parisie v. Greer*, 705 F.2d 882, 892 (7th Cir.1983) (separate opinion), because extensions of time for filing Rule 59(e) motions are not allowed. Fed.R.Civ.P. 6(b). But that is not a problem with the motion in this case.

■ Since the plaintiffs' post-judgment motion was a valid Rule 59(e) motion, the filing of the notice of appeal before the motion was acted on did not, as the district judge believed, divest him of jurisdiction to act on it. Rule 4(a)(4) of the Federal Rules of Appellate Procedure says that a notice of

appeal filed before the district judge acts on a Rule 59(e) motion has no effect; the judge can still act on the motion. Although the plaintiffs' first notice of appeal thus had no effect, the second notice properly brings up to us all of the district judge's orders. The filing of a proper Rule 59(e) motion suspends the 30-day period for filing a notice of appeal from the final judgment until the motion is acted on. It was acted on here when the district judge dismissed it. At this point the plaintiffs had 30 days to file a notice of appeal from the judgment, from the order denying leave to amend the complaint entered at the same time, and from the order disposing of their Rule 59(e) motion; and they met the deadline.

■ Consideration of the merits logically begins with the question whether the plaintiffs' original complaint stated a claim; if so, the district court erred in dismissing it. We have concluded, with misgivings, that the complaint does state a claim under RICO. The statute is constructed on the model of a treasure hunt. You begin at 18 U.S.C. § 1964(c), which provides that "Any person injured in his business or property by reason of a violation of section 1962" may recover treble damages from the violator. You go to section 1962, and find that it is unlawful (a) "for any person who has received any income ... from a pattern of racketeering activity ... to use ... any part of such income" in the "operation of ... any enterprise which is engaged in, or the activities of which affect, interstate ... commerce"; (b) "for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or any control of any [such] enterprise"; (c) "for any person employed by or associated with any [such] enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity"; or (d) "for any person to conspire to violate any of the provisions of" the previous subsections. Section 1961 defines "pattern of racketeering activity" to mean (among other things) two or more acts in violation of various criminal stat-

utes, including 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud); these statutes make it a crime for anyone who, "having devised or intending to devise any scheme or artifice to defraud," uses the mails, or the telephone or some other telecommunications medium, "for the purpose of executing such scheme or artifice...."

 The complaint adequately alleges the use of the mails and the telephone for the purpose of executing the defendants' alleged scheme. But was it a scheme "to defraud"? Read liberally, as the notice-pleading philosophy of the Federal Rules requires that it be read, see, e.g., *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957), the complaint alleges that the defendants, knowing that Mrs. Sutliff was psychologically incapacitated (perhaps having driven her to this state) and desiring to injure their competitors by getting them to extend credit to Sutliff that it could not repay, inveigled Mrs. Sutliff into selling oil to the defendants below its cost. The defendants tell us that this was no more than driving a hard bargain; that they did society a favor in driving from the market a businesswoman too weak-minded to know that you cannot flourish if you buy dear and sell cheap; and that if they are guilty of a federal crime so is the consumer who buys a product below what he thinks are the seller's costs. This argument ignores, however, the allegations respecting Mrs. Sutliff's mental state. If you contract with someone who lacks the mental capacity to enter into a legally enforceable contract, not only is the contract voidable on grounds of incapacity; it is voidable on grounds of fraud, provided that the other party to the contract deliberately took advantage of the mental incapacity when he made the contract. See, e.g., *Encking v. Simmons,* 28 Wis. 272, 280 (1871); *Helbreg v. Schumann,* 150 Ill. 12, 25–26, 37 N.E. 99, 103 (1894); *Casson v. Schoenfeld,* 166 Wis. 401, 408, 166 N.W. 23, 25 (1918); *Hunt v. Golden,* 271 Or. 321, 325, 532 P.2d 26, 28 (1975); *In re Creekmore,* 20 B.R. 164, 169 (Bkrtcy.W.D.Okl.1982). It can make no difference that the contract was with Sutliff, Inc. rather than Mrs. Sutliff herself.

 If as we believe the complaint adequately alleges a "pattern of racketeering activity" (in the special sense in which the RICO statute uses those words) directed against Sutliff, Inc., it does so even more clearly with respect to the other plaintiffs. To create a false impression of solvency in order to induce the extension of credit to an insolvent firm, as the complaint alleges the defendants did in order to induce the plaintiff oil companies to continue selling to Sutliff, is to commit fraud in its commonest form as deliberate misrepresentation, by perpetrating the classic "bust-out" that has been held time and again to violate the mail and wire fraud statutes. See, e.g., *United States v. Tashjian,* 660 F.2d 829, 831–32 (1st Cir.1981); *United States v. Crockett, supra,* 534 F.2d at 592.

 We must next decide whether the requirements of section 1962 are satisfied. The complaint alleges that the defendants used the income from their "racketeering activity" (that is, from the alleged mail and wire fraud) in the operation of Sutliff—concretely, that they used the money they made by reselling the oil which they were fraudulently purchasing from Sutliff to make the cash advances to Sutliff that kept the fraud going. This is a good allegation under section 1962(a). The complaint also alleges that the defendants acquired control of Sutliff by means of the fraud. As control within the meaning of the statute need not be formal—need not be the kind of control that is obtained, for example, by acquiring a majority of the stock of a corporation—see *United States v. Jacobson,* 691 F.2d 110, 112 (2d Cir.1982) (per curiam), this is a good allegation under section 1962(b). The complaint also describes the defendants as having "associated with" Sutliff and conducted its affairs by means of the fraud; and if, as these allegations imply, the defendants infiltrated Sutliff and used it as a tool to defraud it and the other defendants, section 1962(c) was violated. Finally, the allegation that the defendants conspired to violate the previous sub-

sections is a good allegation of a violation of section 1962(d). And since there is no question that as allegedly intended victims of the scheme the plaintiffs were injured in their business or property by reason of the alleged violations, see, e.g., *Schacht v. Brown,* 711 F.2d 1343, 1357 (7th Cir.1983), section 1964 is also satisfied, which completes the elements of a RICO damage claim.

The defendants point out that since no one suggests that they have any connection with organized crime the alleged fraud is remote from the concerns that gave rise to RICO. But Congress deliberately cast the net of liability wide, being more concerned to avoid opening loopholes through which the minions of organized crime might crawl to freedom than to avoid making garden-variety frauds actionable in federal treble-damage proceedings—the price of eliminating all possible loopholes. See, e.g., *United States v. Turkette,* 452 U.S. 576, 588–90, 101 S.Ct. 2524, 2531–32, 69 L.Ed.2d 246 (1981); *Schacht v. Brown, supra,* 711 F.2d at 1353–58. We must abide by Congress's decision, made at a time of less sensitivity than today to the workload pressures on the federal courts and to the desirability of maintaining a reasonable balance between state and federal courts, however much we may regret not only the burdens that the decision has cast on the federal courts but also the displacement of state tort law into the federal courts that it has brought about.

 But the complaint does not state a claim under the federal antitrust laws, even though it uses antitrust language such as "predatory pricing" and "price fixing." Although the exceedingly forgiving attitude toward pleading deficiencies that was expressed by Justice Black for the Supreme Court in *Conley v. Gibson, supra,* 355 U.S. at 45–46, 78 S.Ct. at 101–102—"a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"—continues to be quoted with approval, see, e.g., *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Robb Container Corp. v. Sho-Me Co.,* 566 F.Supp. 1143, 1150 (N.D.Ill.1983), it has never been taken literally. Professors Wright and Miller treat as authoritative the statement in a earlier case that the pleader must "set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery," *Daves v. Hawaiian Dredging Co.,* 114 F.Supp. 643, 645 (D.Haw.1953), and add in their own words that "the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." 5 Federal Practice and Procedure § 1216 at pp. 121–23 (1969). The heavy costs of modern federal litigation, especially antitrust litigation, and the mounting caseload pressures on the federal courts, counsel against launching the parties into pretrial discovery if there is no reasonable prospect that the plaintiff can make out a cause of action from the events narrated in the complaint. See, e.g., *Associated General Contractors v. California State Council of Carpenters,* —— U.S. ——, 103 S.Ct. 897, 903 n. 17, 74 L.Ed.2d 723 (1983) (dictum); *In re Plywood Antitrust Litigation,* 655 F.2d 627, 641 (5th Cir.1981), cert. granted on other grounds, and dismissed at —— U.S. ——, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983) ("Despite the liberality of modern rules of pleading, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory.") And the pleader will not be allowed to evade this requirement by attaching a bare legal conclusion to the facts that he narrates: if he claims an antitrust violation, but the facts he narrates do not at least outline or adumbrate such a violation, he will get nowhere merely by dressing them up in the language of antitrust. *University Life Ins. Co. of America v. Unimarc Ltd.,* 699 F.2d 846, 852 (7th Cir.1983).

The factual allegations in this complaint do not state an antitrust claim. From an antitrust standpoint it is as if the complaint alleged that the defendants were fences who brought oil at cut-rate prices from thieves and then resold it in competition with legitimate dealers at lower prices than those dealers could sell their oil. This would be a species of unfair competition, like stealing a competitor's trade secret or using false advertising to divert a competitor's customers to oneself; but none of these things are antitrust violations; unfair competition, as such, does not violate the antitrust laws. *Id.; Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d 549, 554–59 (7th Cir.1980).

The legislators who passed the Sherman Act did not make ordinary business torts federal torts for which treble damages could be recovered; no such wholesale displacement of state tort law into the federal courts was contemplated or desired, however quaint RICO may make these nineteenth-century legislators' scruples seem. Their concern, at least as it has been understood in recent cases, was with practices that by making markets less competitive hurt the people buying from or selling to the firms in those markets. *See, e.g., Reiter v. Sonotone Corp.,* 442 U.S. 330, 343, 99 S.Ct. 2326, 2333, 60 L.Ed.2d 931 (1979); *Products Liability Ins. Agency, Inc. v. Crum & Forster Ins. Cos.,* 682 F.2d 660, 663–64 (7th Cir.1982). To injure, even to cripple or destroy, one or two competitors in a market will not, if there are many competitors in that market, have much if any effect on consumers or anyone else besides the competitors in question. But that is the only type of injury alleged in this case. The complaint alleges no competitive injury in the antitrust sense; defines no market; refers to no market-wide anticompetitive effects, actual or probable. So far as appears from the complaint there are many wholesalers of oil serving Appleton, and if so then weakening or even destroying Ellingsen and Land O'Lakes might have no effect on the market for oil as distinct from the prosperity of two sellers.

The closest antitrust violation to anything alleged in this case would be a conspiracy among buyers to depress the price of a product that they buy by limiting the amount they buy—a conspiracy, in the language of antitrust economics, to "monopsonize." See, e.g., *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.,* 334 U.S. 219, 235, 68 S.Ct. 996, 1005, 92 L.Ed. 1328 (1948); *National Macaroni Mfrs. Ass'n,* 65 F.T.C. 583 (1964), aff'd, 345 F.2d 421 (7th Cir.1965). But that is not alleged. What is alleged is that two unscrupulous buyers conspired to defraud a woman of unsound mind. It is not against such frauds that the antitrust laws direct their prohibitions.

The premise of the district court's refusal to allow the plaintiffs to amend their complaint was that the original complaint so lacked possible merit as to make it certain that they could not state a claim. See *Fuhrer v. Fuhrer,* 292 F.2d 140, 143 (7th Cir.1961). The premise is correct with regard to the antitrust claim—as is confirmed by the fact that the plaintiffs' amended complaint, which is in the record, adds nothing of significance to the antitrust allegations of the original complaint. The premise is incorrect with respect to the RICO count; and since the case must be remanded anyway the district judge should reconsider the plaintiffs' motion in accordance with the principles set forth in this opinion. For the guidance of the district judge on remand, we note that most of the additional allegations in the RICO count of the amended complaint are legally unsound. Rather than alleging new facts bearing on their right to recover damages under RICO, the plaintiffs list some additional federal crimes that the defendants may have violated. Two of these violations—extortion (Hobbs Act, 18 U.S.C. § 1951) and bankruptcy fraud—have no basis at all in the factual allegations of the complaint. Extortion under the Hobbs Act requires either duress or the use of an official position to obtain payoffs. See, e.g., *United States v. Braasch,* 505 F.2d 139, 151 n. 8 (7th Cir. 1974). Nothing of that sort is alleged here. Bankruptcy fraud under RICO is defined as

"any offense involving fraud connected with a case under title 11," 18 U.S.C. § 1961(1)(D), that is, under the Bankruptcy Code. Sutliff is now the subject of a bankruptcy proceeding but was not during the events in issue here; and the fact that a fraud ends in the victim's filing a bankruptcy petition does not, as the plaintiffs appear to believe, make the fraud a bankruptcy fraud. Now that the plaintiffs know their original complaint stated a cause of action under RICO, maybe they will reconsider their more extravagantly drafted amended complaint.

To summarize, the orders of the district court denying leave to file an amended complaint and denying Rule 59(e) relief from the court's final judgment of dismissal are reversed; the final judgment itself is affirmed in part and reversed in part in accordance with this opinion; and the case is remanded to the district court for further proceedings consistent with this opinion. No costs in this court.

So ORDERED.