# ROBERT F. SHINN

*v.*

# GEORGE W. FREDERICKS *et al.*

1.  PROMISSORY NOTE — *subsequent holder by delivery — subject to what defenses.*  The maker of a promissory note may set up any defense he may have to the note, in the hands of a purchaser, by mere delivery, or who takes it after maturity.

2.  PAYMENT — *what constitutes.*  Where a grantor of land, by agreement with his grantee, rescinds the sale and receives back the deed, but the notes held by the grantor, which were given for the purchase money, were not surrendered to the maker, as was agreed, remaining in the hands of the agent of the grantor, who transferred one of them by delivery, it was *held,* such agreement of rescission operated as a satisfaction of the notes, and the defense would be availing as against the subsequent holder.

3.  Where a person buys land from one who has notes outstanding, which were given upon his own purchase, the second purchaser agreeing, as a part of the consideration, to pay such outstanding notes of his grantor, and upon a sale by himself to the party who holds those notes, receives them in payment for the land, that will amount to a payment of the notes so taken up, and a defense will arise thereon against any subsequent holder of them who is chargeable with notice.

4.  MORTGAGE—*merger in the fee.*  Where the fee to lands and a mort-
gage on the same are united in the same person, the latter becomes merged
in the former, unless there are equitable reasons for keeping the mortgage
alive.

WRIT OF ERROR to the Circuit Court of Woodford county;
the Hon. S. L. RICHMOND, Judge, presiding.

This was a bill in chancery to foreclose a mortgage executed
by George W. and Charles S. Fredericks, to secure the pay-
ment of three certain promissory notes, by them signed, each
for the sum of $333.33⅓, all dated July 7, 1860, drawing six
per cent interest per annum, and given for the purchase money
of the land in said mortgage described.

Joseph Wetzler being, at the commencement of the suit, in
possession of the land, and claiming title thereto, was made a
party defendant.

The facts necessary to an understanding of the case are fully
presented in the opinion of the court.

Mr. JOHN CLARK, for the plaintiff in error.

Messrs. JOHNSON & HOPKINS and C. H. CHITTY, for the de-
fendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears, from the evidence introduced on the trial, that
the land was entered by Joseph Kirk on the 31st of July,
1852.   He soon after removed to the State of Iowa, and left
the land in charge of Darst, as his agent, to look after it and to
pay taxes and make sale.   Darst effected a sale, and Kirk con-
veyed the land to Alexander Easton, a resident of Pennsyl-
vania, on the 25th of December, 1855.   On the 7th of July,
1860, Easton, being in Woodford county, in this State, where
the land is situated, sold it to the two Fredericks for $1,000,
and received for the purchase money three notes of that date,

due respectively in three, four and five years, and for equal sums, and to secure the purchase money took a mortgage on the land.

Soon after their purchase the Fredericks entered into a contract to convey the land to one Michael Sander, at an advance on their purchase of $45, which was at the time paid to them, and for the $1,000 balance they took Sander's notes of equal amounts, and falling due at the same time, as their notes to Easton. Sander went into possession of the land and improved it by breaking a part, but finding he would be unable to meet any of the payments he applied to the Fredericks to rescind the contract; but, depending on him for money to pay Easton, they refused, unless they could, in conjunction, induce Darst, the agent of Easton, to rescind the contract with them and take back the land, and surrender them their notes. And after negotiations had been in progress for a time, Darst obtained Easton's consent to the arrangement, and thereupon the Fredericks released Sander, and the deed to the Fredericks was returned to Easton, in Pennsylvania, and Sander surrendered possession to Darst as Easton's agent. The Fredericks, by the arrangement, were to reconvey to Easton, and Darst to give them their notes to Easton. All of the parties went before a justice of the peace, who drew a deed from the Fredericks to Easton, but they left, saying they were going for the wife of George W. to join in the deed, but did not return, and the deed was never executed, and the notes remained in the hands of Darst. Easton, through Darst, his agent, remained in possession of the land.

On the 8th day of January, 1864, Darst purchased the land of Easton, for $1,200, and received from him a conveyance. Subsequently, the Fredericks, in the following September, conveyed the land to Plank; he thereupon called upon Darst, notified him that he held Fredericks' title, and demanded a settlement, and on the 7th day of February, 1865, Plank sold and conveyed to Darst, and on the 28th of the same month Darst conveyed to Wetzler.

442        Shinn *v.* Fredericks *et al.*        [Sept. T.,

Opinion of the Court.

At the time Darst purchased of Plank he delivered to the latter, without indorsement, as a part of the consideration, the first of the notes of the Fredericks to Easton, which remained in his hands, and upon which this suit is brought. Darst, as he testifies, gave Plank notice that the note was worthless and void, but Plank said he could collect something of the Fredericks. Plank at the same time gave to Darst this writing evidencing their agreement :

"Metamora, Ill., *February* 17, 1865.

Received of John Darst one note of $333.33, on Charles Fredericks and G. W. Fredericks, and dated the 7th day of July, A. D. 1860, at six per cent interest per annum, payable annually from date, due three years after date, and payable to Alexander Easton or order. And it is hereby expressly agreed that the said Darst is entirely released from all recourse either in law or equity on account of the sale of said note to me.

"Elijah Plank."

When Plank purchased of the Fredericks, he took the land subject to the Easton mortgage, and paid them $100, and he, as a part of the consideration, agreed to pay off these notes secured by the mortgage upon the land. Plank, after obtaining the note, sold it to Clark, plaintiff's attorney, who commenced this suit in his name. After the suit was commenced Darst entered satisfaction of the mortgage under a power of attorney from Easton.

The court below, on a hearing, dismissed the original bill to foreclose, and under the cross-bill of Wetzler decreed that the two remaining notes in the hands of Darst be surrendered up, and declared the mortgage canceled.

The question presented by this record is, whether plaintiff in error acquired any lien upon this land when he purchased. The note was past due, and had never been indorsed by the payee, both of which facts charged him with notice of any defense that existed to the note. The maker may set up and

rely upon any defense that he may have to the note in the hands of a purchaser by mere delivery, or who takes it after maturity. This is the long and well settled law regulating commercial paper, and requires no citation of authorities or reasoning for its support.

Did there exist a defense to this note at the time plaintiff in error received it? We think there did, as was shown in several ways. There is no pretense that Darst owned the note, or held any, even the remotest, interest in the note. It was given to Easton for the land, and when the arrangement was made to cancel his sale to the Fredericks they returned his deed, which, it seems, the parties supposed was all that was required to re-vest the title in him. And that he believed such to be the fact may be inferred from his subsequently selling the land and giving a warranty deed. By receiving the deed, we, then, conclude that he intended to and supposed he had received the title in satisfaction and discharge of the notes and mortgage. And as further evidence that he supposed the notes were satisfied, he seems never to have asserted any further claim to them. By selling the land he was estopped from again receiving pay for it by collecting these notes. If any one could have asserted any such claim after that sale it was Darst, who might have urged that he had become the assignee of the mortgage, and was ready to surrender the land upon payment of the notes, or have treated the land as belonging to the Fredericks, and proceeding to foreclose. But this he did not attempt, but seems to have preferred to hold the land. The notes were thus satisfied. Plaintiff in error took no more or better title than Easton or Darst held.

Again, when Darst, the assignee of the mortgage, purchased of Plank, the mortgage and the fee united in him, and the former merged in the latter. Such is always the effect of the union of the fee and the mortgage in the same person, unless there are equitable reasons for keeping the mortgage alive. And the evidence in this case fails to disclose any such equities or necessity. Nor can it be inferred that Darst intended

to keep the mortgage alive, but, on the contrary, when he sold the note, he took the precaution to receive a written agreement that he was not to be held liable, either at law or in equity. This does not have the appearance, on his part, of reviving the mortgage.

Again, when Plank purchased of the Fredericks, he gave $100, and agreed, for the balance of the consideration, he would pay the three notes, of which this was one. He, then, when he sold the land to Darst and obtained the note, paid it, and to that extent carried out the agreement. He gave for it what he had received from the Fredericks, their claim of title, and with the claim he paid the note. By taking up the note under the agreement, it operated as a payment, and he acquired no interest in it. He could not have recovered it of the makers, and, having no title, he could transfer none, as the note was past due and had never been indorsed by the payee. Plaintiff in error took the note subject to all the equities, and, consequently, acquired no right to enforce its payment. The court did right in rendering the decree, and it must be affirmed.

*Decree affirmed.*