(No. 12369.—Reversed and remanded.)

JOHN NOVAK, Defendant in Error, vs. JOHANNA KRUSE, Plaintiff in Error.

*Opinion filed June 18, 1919.*

1. MORTGAGES—*proof that absolute deed is a mortgage must be clear.* The burden of proving that a deed absolute on its face was in fact a mortgage is upon the one making the averment, and such proof must be clear and convincing.

2. SAME—*when grantee is not entitled to be subrogated to benefit of trust deed.* Where a quit-claim deed is taken in satisfaction of a bond and trust deed for money loaned by a building association and the association subsequently conveys the property by warranty deed and releases the trust deed the lien is extinguished, and the grantee in the warranty deed is not entitled to be subrogated to the benefit of the trust deed.

3. SAME—*what grantee must show before being entitled to be subrogated to benefit of a trust deed.* Before a grantee can be subrogated to the benefit of a trust deed against property he has acquired by warranty deed he must have paid or assumed the payment of the bond secured by the trust deed as a part of the consideration for his deed or advanced the money to pay the bond pursuant to an agreement that the trust deed shall be held as security therefor.

WRIT OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

POULTON, GREEN & MERRICK, for plaintiff in error.

EDWARD J. NOVAK, and FRANK H. NOVAK, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

The Appellate Court for the First District affirmed a decree of the superior court of Cook county entered in a suit in chancery brought by the defendant in error against

plaintiff in error and others to revive and foreclose a re-
leased mortgage and remove alleged clouds from the title
to certain land. The cause is brought to this court from
the Appellate Court by petition for *certiorari*.

The bill of complaint made John V. Ayers, Johanna
Kruse and others defendants. After issues joined, the cause
was referred to a special commissioner, who recommended
that a decree be entered in accordance with the prayer of
the bill of complaint, pursuant to which the chancellor en-
tered the decree in question, embodying the findings of fact
of the special commissioner.

The essential facts necessary to the issues involved as
they appear from the greater weight of the testimony are,
that on January 15, 1900, John V. Ayers, being at that time
the owner of the land in question with other real estate not
involved in this case, executed a trust deed to John G. Pa-
noch, as trustee for the Bohemian-American Building and
Loan Association, to secure the payment of his bond of
that date in the principal sum of $4000, payable to the
order of the association. Edward J. Novak was named in
the trust deed as successor in trust. This trust deed was
acknowledged on said date and duly recorded in the trust
deed records of said county on January 17, 1900. A quit-
claim deed was also executed on the same date as the trust
deed by Ayers to the association conveying the land in ques-
tion to the association. Ayers defaulted in his payments
on the bond and the association recorded the quit-claim deed
on May 8, 1900. Immediately upon recording the deed
the association took possession of the land in question and
completed the building of certain structures then being con-
structed upon the land and expended in the aggregate about
$1800 in completing the buildings. After the completion
of the buildings the association leased the property and col-
lected the rent, insured the buildings and exercised the usual
powers of ownership until July 22, 1902. The association
being in financial stress, on that date sold and conveyed

the property to James Novak for John Novak, defendant in error, for the consideration of $4200, of which $1000 was paid in cash and the remainder by receipts for money paid in by John Novak on stock subscription in the association. By its deed the association covenanted that the property was clear and free from all incumbrance. On July 25, 1902, the association executed a release of the trust deed in question. The bond and trust deed were not assigned. On January 30, 1900, Alva Johnson and Charles N. Whitehead recovered a judgment for $91.84 against Ayers, upon which an execution was duly issued. On November 5, 1900, Theodore N. Bell secured a money judgment for $432.50 and costs against Ayers by virtue of section 13 of the Mechanic's Lien act of Illinois, which provided that in the event the court found no right to a lien existed, recovery against the owner of the property could be had as at law. Said lien was filed against other property of Ayers and not against the property in question. Execution was duly issued upon the Johnson and Whitehead judgment and the premises were sold by the sheriff September 30, 1902, for $130.38, and the sheriff issued his certificate of sale on that date, which was filed for record on October 2, 1902. The holder of the Bell decree redeemed from the sale on the Johnson and Whitehead judgment. The sheriff issued his certificate of redemption, and on the same day levied an execution on the Bell decree and judgment and issued a certificate therefor on January 26, 1904, from which there being no redemption, the sheriff issued his deed to Joseph P. Vesely on January 26, 1904, who later conveyed the lot in question to the plaintiff in error, Johanna Kruse. In July, 1902, the association was insolvent, and shortly after it went into liquidation and its affairs were wound up.

Defendant in error testified that he knew nothing concerning said bond or trust deed, and at the time of the alleged purchase understood that he was getting the lot free of incumbrance.

The release of the trust deed was executed by the president of the association, in which release it was recited that John G. Panoch, trustee, refused to release the trust deed, and that the release so executed by the president of the association was at the request of the board of directors of the association, pursuant to the statute in such cases provided. It is contended by the defendant in error and found by the chancellor that said release was inadvertently made and that it should not have been executed, the chancellor holding that the giving of the quit-claim deed and the recording thereof did not pass the title to the premises nor operate to extinguish the trust deed, and that therefore, when defendant in error took through his brother, James Novak, a warranty deed from the association he took only the rights of the association under the trust deed and became subrogated thereto, and that the debt under the bond and trust deed had never been paid.

On a review of the evidence we are convinced that the quit-claim deed was given by Ayers to the association with authority to record the same and take title to the property on default of payments under the bond, and that when the quit-claim deed was recorded the title passed to the association. It appears from the testimony of at least two witnesses who were shown to have been at that time connected with the association that such was the intention of the parties to the quit-claim deed. In addition, Ayers, who after the quit-claim deed was recorded abandoned the premises, in his answer to the bill herein alleges that such was the understanding. This is further borne out by the fact that the association for two years rented the premises, insured the buildings thereon and paid the taxes, all in its own name, and it recited in its warranty deed to James Novak and in the resolution of its board of directors that it owned the premises. This being the clear understanding of the parties to the deed, such must be the effect of the instrument. The burden of proving that a deed absolute on its face was in

fact a mortgage is upon the one making such averment. Such proof must be clear and convincing. *Deadman* v. *Yantis*, 230 Ill. 243; *Rasch* v. *Rasch*, 278 id. 261.

It is evident that the property was deeded by Ayers and taken by the association in payment of the bond and trust deed for money loaned. That being true, the transfer of the title to the property operated as a satisfaction and extinguishment of the bond and trust deed, and when the association released the trust deed it not only acted in accordance with the understanding of both parties to the bond and trust deed but did what it was in duty bound to do. It follows, that when the warranty deed was executed to James Novak for defendant in error, the bond and trust deed had been satisfied and extinguished and no longer existed as a lien against the premises.

By his bill the defendant in error seeks to be subrogated to the rights of the association under and by virtue of the bond and trust deed. But the bond and trust deed having been satisfied and extinguished, there were no rights remaining in the association to which he could be held to be subrogated, and the release of the trust deed, though made after the deed to James Novak, did not prejudice the rights of defendant in error, for the reason that he could acquire no rights under them. It is not even contended that he paid or assumed to pay any obligation of the bond of Ayers or any part thereof. The full value of the property was quoted to him at $4200. This amount he paid by receiving full credit for $3200 paid in by him on stock subscription and adding thereto the sum of $1000. The bond and trust deed were not mentioned, he testifying that he had not at that time heard there ever had been such a transaction. Indeed, it is urged with some force by plaintiff in error that defendant in error in his purchase of the premises overreached other stockholders of the association, in that he was by the conveyance to him of lot 27 allowed to withdraw the full value of the money paid in by him

on stock in an insolvent association while others in the association desired to withdraw and could not.

In *Home Savings Bank* v. *Bierstadt,* 168 Ill. 618, on page 623, this court clearly defines the principle of subrogation in the following language: "Subrogation, as a principle of equity jurisprudence, is generally confined to the relation of principal and surety and guarantors, or to a case where a person is compelled to remove a superior title to that held by him in order to protect his own, and also to cases of insurers. The general principle of subrogation is confined and limited to these classes of cases. (*Bishop* v. *O'Conner,* 69 Ill. 431; *Borders* v. *Hodges,* 154 id. 498.) While these general heads include the doctrine and principles of subrogation, that doctrine has been steadily expanding and growing in importance and extent in its application to various subjects and classes of persons. This equitable principle is enforced solely for the accomplishment of substantial justice, where one has an equity to invoke which cannot injure an innocent person. The right of subrogation which springs from the mere fact of the payment of a debt, and which is included under the heads first above stated, is what is termed legal subrogation and exists only where included within those classes. But in addition to this principle of legal subrogation there exists another principle, which is termed conventional subrogation, which results from an equitable right springing from an express agreement with the debtor, by which one advances money to pay a claim for the security of which there exists a lien, by which agreement he is to have an equal lien to that paid off, whereupon he is entitled to the benefit of the security which he has satisfied with the expectation of receiving an equal lien.—*Coe* v. *Maryland Railway Co.* 31 N. J. Eq. 105; *Tyrrell* v. *Ward,* 102 Ill. 29; *Tradesmen's Ass'n* v. *Thompson,* 32 N. J. Eq. 133.

Before the complainant could have been held to be subrogated to the benefit of the trust deed of Ayers he must

have paid or assumed the payment of the bond of Ayers secured by the trust deed as a part of the consideration of the deed of the association to him or advanced the payment of the bond pursuant to an agreement that the trust deed should be held as security for the money so advanced. (*White* v. *Cannon,* 125 Ill. 412; *Tyrrell* v. *Ward, supra; Young* v. *Morgan,* 89 Ill. 199.) Even though the bond and trust deed had not been satisfied, ·still, the complainant not having paid or assumed the payment of the bond of Ayers as a part of the consideration of his deed from the association to him and not having advanced the payment of said bond pursuant to an agreement that the trust deed should be held as security for the money so advanced, would not be subrogated to any interest represented by the bond and trust deed. Defendant in error not having brought himself within the rule entitling him to subrogation, was in nowise prejudiced by the release of the trust deed in question.

Complainant in his bill, in support of his claim to subrogation to the rights of the association under the bond and trust deed, avers that the same are still in full force and effect, and that under that subrogation he is entitled to have paid to him the $4000 represented by the bond and trust deed. In other words, he makes the interesting claim that having paid out no more than the unincumbered fee to the property is worth, he is now entitled to receive back the sum of $4000 and interest from January 15, 1900, though he appears to have assumed no obligation under the bond and trust deed, and although Ayers, from whom he claims this amount, turned over the entire property to satisfy the indebtedness thereunder. In order to support this claim the bill pleads the legal conclusion that the warranty deed operated merely as an assignment of the bond, trust deed and quit-claim deed and not to pass title. No facts are averred to sustain such a position and none appear in evidence. The complainant in his testimony admitted that he did not even

know of the existence of such trust deed or bond or quit-claim deed at the time his deed was made and that he considered he was buying the lot free from all incumbrance, yet such is his claim made in his bill and the theory upon which the decree of the chancellor appears to be founded. Nowhere in his bill, however, does he claim to have acquired by his purchase anything other than the lien created by the bond and trust deed, which he asserts is a prior lien. Despite his statement in his testimony, his bill nowhere avers that he ever acquired the title to said property. Indeed, if he admits title in him and avers that he is the beneficial owner of the bond and trust deed, he must show that which this record does not contain to avoid the merging of the two estates. This, apparently, he does not desire. His bill is based wholly upon the theory that he stands subrogated to the rights of a holder of a trust deed who has a right to have the same foreclosed and to have a sale thereon. The bill prayed such a sale and the decree ordered it. The bill also prayed that the judgments herein referred to and deeds thereunder be set aside as clouds upon complainant's title. Since complainant is seeking subrogation to the bond and trust deed and foreclosure of them, and since the decree of the chancellor finding such subrogation and awarding such sale must be reversed, it is unnecessary to discuss the validity of said judgments. Under the theory upon which the defendant in error's bill is drawn it would be immaterial whether such judgments were valid, as under such theory his lien would have been a prior lien.

The judgment of the Appellate Court and the decree of the superior court are reversed and the cause remanded to the superior court, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*