Eugene Tabero, Appellee, v. Waclaw Sutkowski et al. Watkowski Sutkowski, Appellant.

Gen. No. 38,827.

226

Opinion filed June 29, 1936.

ALEX JANOSKI and WACHOWSKI & WACHOWSKI, all of Chicago, for appellant; CASIMIR R. WACHOWSKI, of counsel.

VINCENT L. KNAUS, of Chicago, for appellee.

Mr. Justice O'Connor delivered the opinion of the court.

Plaintiff, the assignee of a deficiency decree for $1,824.99, rendered in a foreclosure suit against Sutkowski, being unable to collect the deficiency, filed his creditor's bill to discover assets of Sutkowski, who will hereinafter be referred to as defendant. Defendant filed his answer and counterclaim by which he denied he was liable for the deficiency and sought to have the collection of it perpetually enjoined. Plaintiff filed a written motion to strike the answer and counterclaim. The motion was allowed and defendant appeals.

Plaintiff contends that the order entered is but interlocutory and not final, and therefore not subject to review. The contention is not tenable. The order striking defendant's answer and counterclaim virtually disposed of the entire case, as will appear from the facts hereinafter stated.

The pertinent facts are that Mary Tobijanski filed her bill in the superior court of Cook county to foreclose a trust deed given to secure an indebtedness of $4,000. The trust deed was executed by defendant and his wife on April 14, 1925, and was given to secure their indebtedness for $4,000 due three years after date. Afterward, defendant and his wife conveyed the premises, subject to the mortgage indebtedness, to Adam Kaszuba and wife, and it was alleged in defendant's counterclaim that Kaszuba assumed and agreed to pay the $4,000 as part of the consideration. Thereafter the time of payment of the $,4000 was extended by agreement between the mortgagee and Kaszuba, without the knowledge or consent of defendant, Sutkowski. After the property was conveyed by Sutkowski to Kaszuba, as above stated, Kaszuba paid the interest on the indebtedness to the mortgagee. After some years Kaszuba defaulted in payment of interest, and in July, 1935, Mary Tobijanski, the owner

of the notes and trust deed, filed her bill to foreclose the trust deed, making Sutkowski, Kaszuba, the owner of the equity, and others, parties defendants, and prayed that in case the property did not sell for sufficient to pay the indebtedness a deficiency decree be entered for any amount remaining due.

Defendant further alleges in his counterclaim that on July 22, 1935, while the foreclosure suit was pending, plaintiff in the foreclosure suit (Mary Tobijanski) made and delivered to Kaszuba a ''Covenant Not to Enforce Judgment,'' which recites that in consideration of the sum of $10 and other good and valuable considerations paid to Mary Tobijanski by Adam Kaszuba, she covenanted that she would not enforce any deficiency decree that she might be entitled to in the foreclosure suit against him. And it is alleged in the counterclaim that at the same time Kaszuba, as part of the consideration thereof, executed and delivered to Mary Tobijanski a quitclaim deed to the property in foreclosure, conveying the premises to her or to some nominee for her benefit, and that immediately thereafter Mary Tobijanski took possession of the property and occupied it by her tenant; that afterward, in October, 1935, a decree of foreclosure was entered which found that defendant, Sutkowski, was liable for any deficiency. Shortly thereafter Sutkowski sought to have the decree modified so that he would not be held for the deficiency, but his motion was denied.

Defendant also alleged in his counterclaim that he first learned of the execution of the covenant not to enforce the deficiency decree, and of the quitclaim deed, on Friday, January 24, 1936; that he used due diligence prior to that time to ascertain the facts but was unable to do so, one of the reasons being that Kaszuba had, prior to July 22, 1935, taken a hostile attitude toward him. The prayer of the counterclaim was that plaintiff, to whom the deficiency decree was

assigned by Mary Tobijanski, be perpetually enjoined from enforcing or attempting to enforce it.

Plaintiff, in his written motion to strike defendant's answer and counterclaim, specifies a number of reasons, one of which is that the matter had been adjudicated in the foreclosure suit when Sutkowski's motion to modify the decree, as to him, so that he should not be held for any deficiency, was overruled.

It is recited in the order appealed from, in which defendant's answer and a counterclaim were stricken, that the court, having read the answer and counterclaim and after argument of counsel, finds among other things, that on October 2, 1935, an order was entered in the foreclosure suit denying Sutkowski's motion to amend the decree in that case so that he could not be held personally liable for any deficiency, and therefore the question of defendant's liability for the deficiency had been adjudicated and could not be collaterally attacked.

There was nothing in the pleadings before the court in the instant case which set up the decree in the foreclosure suit and defendant's motion to modify it, and since there was no evidence heard the court was not warranted in making a finding as to what was done in the foreclosure suit. If plaintiff desired to have those matters appear, he should have followed the provisions of sec. 48 of the Civil Practice Act, by supporting his motion by an affidavit and set up the proceedings in the foreclosure suit. Not having done so, the sufficiency of the answer and counterclaim must be judged from their allegations.

Defendant's contentions are (1) that the record discloses that he, as mortgagor, conveyed the premises to Kaszuba, subject to encumbrances which Kaszuba assumed and agreed to pay; that the mortgagee, by a binding agreement with Kaszuba, extended the time of payment of the indebtedness without defendant's

knowledge or consent; that afterward the mortgagee, for a valuable consideration, gave a covenant to Kaszuba not to enforce any deficiency decree that might be rendered in the foreclosure suit against him, and the mortgagee having received a quitclaim deed from Kaszuba conveying the premises, these acts released defendant Sutkowski; and (2) that when the premises were conveyed by quitclaim deed from Kaszuba to the mortgagee, there was a merger of the entire title in the mortgagee and the lien was thereby extinguished.

On the other hand, plaintiff's contention is that the execution by her of the covenant not to enforce any deficiency against Kaszuba and the conveyance of the title to the premises to her by virtue of the quitclaim deed did not release Sutkowski, because the trust deed executed by Sutkowski expressly provided that "the liability of the maker of said principal note shall in no case cease until said principal note shall have been paid and cancelled." And, "It is further agreed by and between the parties hereto" that the trustee in the trust deed, with the consent of the holders of the principal note, "may at any time by agreement with the then record owner of the premises . . . extend the time of payment of the indebtedness . . . but that such extension shall not release" the mortgagor from liability nor shall such extension affect the lien of the trust deed.

This last contention might be sound were the defendant, Sutkowski, seeking to avoid liability on the ground that the time of payment of the indebtedness secured by the trust deed was extended by an agreement between the mortgagee and Kaszuba, the grantee of the mortgagor, without his knowledge or consent. But this is not defendant's contention. His position is that he was released from liability because the mortgagee had obtained title to the premises from Kaszuba

and had given Kaszuba a covenant not to enforce any deficiency decree. It has many times been held that where a mortgagor sells the premises to one who assumes and agrees to pay the indebtedness, the relation then between the mortgagor and his grantee is that of principal and surety, while each or both are liable to the mortgagee. *Albee v. Gross,* 250 Ill. App. 98; *Douglass v. Ullsperger,* 251 Ill. App. 145, and cases cited in the opinions in these two cases from the Appellate and Supreme Courts of this State.

In the *Albee* case the court (p. 106) quoted from *Union Mutual Life Ins. Co. v. Hanford,* 143 U. S. 187, the following: "By the law of Illinois, . . . as by the law of New York and of some other states, the mortgagee may sue at law a grantee who, by the terms of an absolute conveyance from the mortgagor, assumes the payment of the mortgage debt. . . . According to that view, the grantee, as soon as the mortgagee knows of the arrangement, becomes directly and primarily liable to the mortgagee for the debt for which the mortgagor was already liable to the latter, and the relation of the grantee and the grantor toward the mortgagee, as well as between themselves, is thenceforth that of principal and surety for the payment of the mortgage debt."

And in the *Albee* case the court quoted from Jones on Mortgages, 7th Ed., sec. 741 (same as section 920, 2 Jones on Mortgages, 8th Ed.). That section is: "A purchaser who assumes the mortgage becomes as to the mortgagor the principal debtor, and the mortgagor a surety; but the mortgagee, unless he has assented to such an arrangement, may treat both as principal debtors, and may have a personal decree against both. . . .

"The change of position can only be brought about, as regards the mortgagee, by his voluntary agreement to accept the grantor and grantee in their relation of

principal and surety. . . . The mortgagee may release the mortgagor from his personal liability in such case without discharging the land, or the grantee, who assumed the debt. But he cannot release the grantee, who has become the principal debtor, without releasing the mortgagor who has become the surety. . . . The mortgagee may, by his dealings with the purchaser and mortgagor, recognize the former as the principal debtor, and the latter as surety towards himself. . . . Any material alteration of the mortgage contract will discharge the mortgagor.''

In the instant case the allegations of the answer and counter-claim, which must be assumed to be true on this record, disclose the fact that after the filing of the foreclosure suit, and while it was pending, the mortgagee, by taking title to the premises from the grantee of the mortgagor and by executing the covenant not to enforce any deficiency against the grantee of the mortgagor, was a material alteration of the mortgage contract and will discharge the mortgagor. Moreover, there was a merger of the title to the premises in the mortgagee. Obviously, one cannot hold a mortgage on his own property. *Clark v. Glos,* 180 Ill. 556; *Donk v. Alexander,* 117 Ill. 330; *Shinn v. Fredericks,* 56 Ill. 439; *Lyman v. Gedney,* 114 Ill. 388; *Bank of Chrisman v. Watson,* 277 Ill. 186.

In discussing the question of merger the court, in the *Clark* case (180 Ill. 556) said (p. 564) : ''If Pierson had obtained from Thurlow, the grantee of Ladd, a deed of the eight lots, involved in this suit, and thereafter had procured an assignment to himself of the judgment, which was a lien upon those lots, it would be a serious question whether a merger had not taken place. The present case would then be brought within the doctrine laid down in the case of *Donk v. Alexander,* 117 Ill. 330. . . . The question here presented, however, is whether, where a judgment is a lien upon

two pieces of land, a party who has taken a deed from the judgment debtor of one of the pieces of land, and then afterwards obtains an assignment of the judgment to himself, can enforce the judgment against the piece of land, the title to which remains in the judgment debtor (or a prior grantee from him), and of which such party did not obtain a deed to himself." The court continuing refers to *Caley v. Morgan,* 114 Ind. 350, and says: "In the latter case it was held that the purchaser of land is not estopped from buying a judgment against his grantor, existing at the time of the conveyance, and enforcing it against other lands, owned by the latter at the time of the rendition of the judgment or acquired by him afterwards; and that, in such case there is no merger of the lien." On page 566 the court further said: "Again, 'an assignment of a mortgage to a grantee of the mortgagor, unless he has expressly assumed to pay it and thus made himself the principal debtor, does not generally create a merger.' (2 Pomeroy's Eq. Jur., sec. 793.) . . . The rule that an assignment of the encumbrance or charge to the owner of the property works a merger thereof, does not generally apply to a grantee of the mortgagor or judgment debtor, unless the latter takes a conveyance of the lands subject to the mortgage or judgment, and expressly assumes and promises to pay it, as a part of the consideration; because he is thereby made the principal debtor, and the land is the primary fund for payment, so that, if he pays off the charge, it becomes extinguished."

In the *Shinn* case (56 Ill. 439) it was held that where the fee to lands and a mortgage on the same property are united in the same person, the latter becomes merged in the former unless there are equitable reasons for keeping the mortgage alive.

And in the *Lyman* case (114 Ill. 388) it was held that where the mortgagor conveys the mortgaged property

to the mortgagee and another person, and the mortgagee afterward conveys the property to that other person, such conveyance will extinguish the mortgage. The court there said (p. 406): "Objection is urged that a mortgage made by Broomfield to Sizer March 2, 1842, is not shown to have been satisfied; but it is proved that Broomfield, after executing the mortgage, conveyed the fee to Sizer, the mortgagee, and W. H. Cushman, and that Sizer subsequently conveyed to Cushman. That extinguished the mortgage. *Weiner v. Heintz,* 17 Ill. 262; *Shinn v. Fredericks et al.,* 56 id. 439."

In the instant case the title to the premises was conveyed to the mortgagee so that under the rule announced in the authorities above cited there was a merger and the mortgage was extinguished at least as to Sutkowski. Moreover, after Sutkowski conveyed the premises to Kaszuba subject to the encumbrance of $4,000 which Kaszuba assumed and agreed to pay, as alleged in the counterclaim, the relation between them was that of principal and surety, and plaintiff in the foreclosure suit, by taking title to the property and executing the covenant not to enforce any deficiency decree, as above stated, released Sutkowski. *Albee v. Gross,* 250 Ill. App. 98; *Metz v. Dionne,* 250 Ill. App. 369. In the latter case we said (p. 372): "The case calls, however, for the application of the general principle that, where the holder of a mortgagor's grantee, which changes the original obligation of the mortgagor, such an agreement releases the original obligor or mortgagor. That this is the rule seems too well settled to require citation of authority." The court then referred to *In re Roth,* 272 Fed. 516, and continuing said that the general rule stated in the *Roth* case was "that, if the mortgagee sees fit to enter into contractual relations with the grantee of the mortgagor, then the mortgagee 'makes himself a party there-

to, and must in so contracting and henceforward deal with the parties in view of that changed relationship. This imposes upon him no hardship, and does not against his will alter his original contract. If he by this contract with the grantee . . . alters the terms of the original obligation, no good reason is perceived why the rule applicable as between principal and surety should not be applied to him.' '' And we think the application of this rule was not affected by reason of the provision of the trust deed which provided that ''the liability of the maker of said principal note shall in no case cease until said principal note shall have been paid and cancelled.'' That provision, as applied to the facts in the instant case, did not prevent a merger nor did it authorize the mortgagee to abrogate the rule of law which created the relationship of principal and surety between Sutkowski and Kaszuba.

We are also of opinion that the overruling of defendant's motion to modify the decree of the foreclosure suit, so that he would not be liable for any deficiency, was not *res judicata* for the reason that defendant alleges in his counter-claim that although he was diligent he did not know Kaszuba had executed the quit-claim deed and had received the covenant not to enforce any deficiency decree, as above stated, until January 24, 1936, which was several months after the motion or decree of foreclosure had been denied. The effect of these two documents was not presented to the chancellor in the foreclosure suit, and the matter was not there adjudicated. *Robinson & Co. v. Marr,* 181 Ill. App. 605.

As a general rule, a court of equity will not relieve a defendant who has negligently failed to make a defense, but if without negligence he did not know of such defense until after the decree was entered, a court of equity will relieve him. *Hubbard v. Hobson,* Breese (1 Ill.) 190; *Chapman v. Salfisberg,* 111 Ill. App. 102.

The order of the superior court of Cook county appealed from is reversed and the cause is remanded with directions to overrule plaintiff's motion to strike.

*Reversed and remanded with directions.*

MATCHETT, P. J., and McSURELY, J., concur.