## COMMERCIAL MERCHANTS NAT. BANK & TRUST CO. OF PEORIA v. LE TOURNEAU et al.

No. 8159.

Circuit Court of Appeals, Seventh Circuit.

June 28, 1943.

Rehearing Denied Aug. 9, 1943.

Writ of Certiorari Denied Oct. 25, 1943.

See 64 S.Ct. 93, 88 L.Ed. ——.

Walter G. Todd, Alan W. Boyd, and Charles M. Wells, all of Indianapolis, Ind., for appellants.

Frank C. Dailey, Paul Y. Davis, Harvey B. Hartsock, Geo. S. Dailey, James E. Lesh, and Gustav H. Dongus, all of Indianapolis, Ind., for appellee.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

**EVANS, Circuit Judge.**

Defendants' default on their payments and plaintiff's election to declare the full amount due, would unquestionably have necessitated the granting of a judgment for the amount of the note with interest, were it not for plaintiff's acceptance of a deed of the mortgaged property and its action at that time. Its action furnishes the basis of the two contentions which defendants make. It is conceded that the sum which plaintiff later realized from the sale of the premises should be applied upon the note.

Defendants argue that they are not liable for a deficiency judgment *in the absence of foreclosure proceedings,* because: (a) There was a merger in the mortgagee of the legal and equitable title to the real estate covered by the mortgage given to secure the note sued upon; (b) Even though there was no merger, they were released from all liability because plaintiff granted an extension of time of payment to the defendants' grantee.

As to the facts, there is no serious dispute.

H. H. Company received a warranty deed from defendants, subject to plaintiff's mortgage. It did not assume defendants' indebtedness. It proposed thereafter that plaintiff rent the property and apply the income upon the note and mortgage. Plaintiff replied by asking H. H. Company to execute a quitclaim deed to one L, an officer of plaintiff, and sign a so-called "covering agreement," which read:

"The purpose of the covering agreement is to avoid foreclosure and to give you a reasonable opportunity to sell the place and get something out of it for yourselves; the idea being that until noon of October 31, 1939, you can pay us off and make any disposition of the house you see fit, and may put it on the market at your own price. After that date, we are to be free to make any sale we can. * * *

"In order to protect ourselves, I am sending LeTourneau notice that we have declared the mortgage due for nonpayment of interest and taxes, and I enclose a copy of that notice to you."

The quitclaim deed to L carried an $8.50 stamp.

To make its position perfectly clear, plaintiff wrote a letter to H. H. Co. which was acquiesced in by H. H. Co., setting forth the understanding of the parties when plaintiff received the deed. The letter read:

"In consideration of this conveyance, the undersigned agree that to and including noon of October 31, 1939, it will not sell or convey these premises except with

your written consent and that until that time it will convey these premises to any person you designate upon payment in full to this Bank of all sums owing to it under its mortgage on the premises, recorded in Book 522, Page 413, Recorder's Office, Peoria County, Illinois.

"This Bank may take possession of the premises at once subject to the terms of this Agreement.

"It is understood that the delivery of this Quit-Claim Deed is not intended by either party, nor by this Bank, to constitute or effect a merger of the above mentioned mortgage on the premises."

On the same day Luke, the grantee named in the deed from H. H. Co., quit-claimed the property to plaintiff.

This action was brought, July 11, 1941. The bank's notice of election to declare the full amount of the note, principal and interest due, was mailed, August 22, 1939.

■ Defendants' argument that there was a release of liability (Conerty v. Richsteig, 379 Ill. 360, 41 N.E.2d 476) because plaintiff granted an extension of time to H. H. Co. is rejected for two reasons. First, there was, in fact, no extension of the date of the maturity of the debt. The most favorable construction to be placed upon plaintiff's agreement was that it agreed not to sell the property before noon, October 31, 1939, and agreed to convey the property to any person to whom H. H. Co. might sell it if plaintiff received a definite sum of money, to-wit, the amount due on the note, with interest, before that hour.

■ Rejection of this contention is also based upon the Indiana practice. See State v. Traylor, 77 Ind.App. 419, 132 N.E. 608, where it is held that a discharge through an extension of time of payment is an affirmative defense and must be pleaded. Also see Rule 8, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. This suit, having been brought in the State of Indiana, in the U. S. District Court, the law of Indiana governs as to the requirements and necessities of the pleadings.

It is also worthy of note that the case of Conerty v. Richsteig, supra, might be distinquished from this case. In the Conerty case the purchaser from the mortgagor assumed the mortgage indebtedness.

Whether there was a merger with the resulting satisfaction of the debt presents quite a different and a more difficult question.

■ Here, it is argued, the law of Illinois governs because the conveyances and their effect involved title to Illinois real estate. Under Illinois law, if there were a merger, the mortgage debt was extinguished. Forthman v. Deters, 206 Ill. 159, 69 N.E. 97, 99 Am.St.Rep. 145; 37 Am.Juris. page 429.

The controverted question, however, is not over the effect of a merger, so much as over the existence of a merger.

To refute the claim of merger, plaintiff relied upon its written statement to H. H. Co., written at H. H. Co.'s request, and to avoid dispute. This written statement made when the deed was executed and delivered to L contained these significant words:

"* * * It is understood that the delivery of this quitclaim deed is not intended by either party, nor by this Bank, to constitute or effect a merger * * *."

For the purpose of this argument, in the absence of any such agreement by plaintiff and the H. H. Co., we may assume that there would have been a merger. Also we may assume, for the purpose of the argument, that if suit were brought in Illinois, a merger would have extinguished the debt.

■ Decisive, then, of the controversy, with these assumptions, is the question,— May the parties by agreement determine the consequence of their action, when such action consists of passing title to real estate by deed from a mortgagor to a mortgagee? Our conclusion is that the parties could and did avoid the effect of a merger by their express agreement not to effect a merger. Lyman v. Gedney, 114 Ill. 388, 29 N.E. 282, 55 Am.Rep. 871; Forthman v. Deters, 206 Ill. 159, 69 N.E. 97, 99 Am.St.Rep. 145; First National Bank v. Watson, 277 Ill. 186, 115 N.E. 156; Shippen v. Whittier, 117 Ill. 282, 7 N.E. 642; Moffet v. Farwell, 222 Ill. 543, 78 N.E. 925; Campbell v. Carter, 14 Ill. 286; Security Co. v. Schlender, 190 Ill. 609, 60 N.E. 854; Richardson v. Hockenhull, 85 Ill. 124; Kessler v. Aller, 287 Ill.App. 606, 5 N.E.2d 761; Continental Ill. Bank & T. Co. v. Cunningham, 291 Ill. App. 180, 186, 9 N.E.2d 664; Jones on Mortgages (8th Edition), Sec. 1088, 1089.

For discussion of the question, see note to 95 A.L.R. 89.

It should be noted that defendants had parted with their title to the real estate. They had no equity of redemption. The purchaser from them found himself with property falling in value and worth less than the outstanding mortgage. He was willing to save the mortgagee the expense of foreclosure, yet if there were a recovery in real estate value, he desired to reduce, and if possible avoid, his loss. He offered to turn over the real estate upon conditions named. The mortgagee was unwilling to accept unless it was validly agreed that its rights against the debtor were unimpaired. In other words, if there were a merger, its claim on the note might be lost. It therefore declined to accept a deed, unless it were agreed there was no merger. They so agreed and put their agreement in writing.

Was this agreement effective? Did it prevent a merger?

We answer both questions in the affirmative.

The law is both clear and uniform as to the effect of a transfer of mortgaged property by a mortgagor to a mortgagee. The result is the so-called merger which effects a discharge of the mortgage and the satisfaction of the debt.

Illinois has chosen to fortify or strengthen this law by a statute, but the result is the same, whether the origin is statutory or judicially-made law.

The query persists, however. Is there a merger if the parties agree that there is no merger intended? When there would have been no deed passed (executed or accepted), unless there was an agreement not to discharge the debt, was there a merger?

Strong reasons support the right of the parties to turn over liened property without satisfaction of the debt. Expense of foreclosure, the possibility of lost sales, are both avoided by recognizing the right of the parties to so contract. Also, as here, the mortgagor could safely advance money to make needed repairs to make the property again productive.

If doubt in this case exists, we believe it is not over the right of the parties to make an agreement respecting a merger, but as to the existence of an agreement in the face of the facts disclosed by the record. In other words, the more troublesome inquiry is as to the effect of plaintiff's action when it sold and conveyed, by warranty deed, this property to S. Did it not then nullify its written agreement that there was no merger? We think it did, but only in part. To the extent of the purchase price it received, there was a satisfaction of the debt,—a merger. No more. Its agreement against a merger was a conditional one. The condition was that the price received by the plaintiff on its sale of the property was to be applied on the debt. This was an essential part of the no merger agreement, but it defeated neither the existence nor the effect of the no merger agreement.

In conclusion we might observe that we have not passed on whether Indiana or Illinois law determines whether a merger occurred in this case.

The parties lived in Indiana. They were not dealing with title to Illinois real estate as such. Defendants had parted with all their interest in this real estate. They had sold their equity of redemption. The purchaser of this equity and the defendants—both Indiana residents—made this agreement in Indiana in reference to the effect of a deed given by the former to the latter. They agreed it was not to be construed as a merger. It is debatable whether the law of Illinois governs as to the existence and validity of this agreement, although the real estate was in Illinois. We have not decided this question because we are satisfied that the law of both states gives to the parties the right to make a valid contract as to the merger effect of a conveyance by one to the other.

The decree is affirmed.

LINDLEY, District Judge (dissenting in part).

I agree with everything the majority has said, except that I cannot escape the conviction that under the Illinois authorities a merger was effected.

In Illinois, every deed under which the grantor reserves, either by parol or express provision, a right to redeem, i.e., an equity of redemption, is a mortgage. Illinois Revised Stat.Chap. 95, Sec. 13 provides that "every deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage." This includes every conveyance to secure a debt (Fitch v. Wetherbee, 110 Ill. 475); an oral agreement to permit a title in fee simple to stand as security (Worden

v. Crist, 106 Ill. 326); a deed, absolute on its face, given to secure a previously existing debt (De Wolf v. Strader, 26 Ill. 225, 79 Am.Dec. 371; Bullock v. Battenhousen, 108 Ill. 28); a conveyance with a separate agreement to reconvey on payment of a certain sum (Miller v. Thomas, 14 Ill. 428; De Voigne v. Chicago T. & Tr. Co., 304 Ill. 177, 136 N.E. 498); and this, though the agreement rests in parol (Scanlan v. Scanlan, 134 Ill. 630, 25 N.E. 652; Gannon v. Moles, 209 Ill. 180, 70 N.E. 689; Deadman v. Yantis, 230 Ill. 243, 82 N.E. 592, 120 Am.St.Rep. 291); and even though the parties stipulate that title shall become absolute and unredeemable on failure of the grantor to pay the debt on the day fixed (Bane v. Pritchett, 223 Ill.App. 617) for "once a mortgage is always a mortgage." Mann v. Jobusch, 70 Ill.App. 440. The right of redemption can be barred only by the method recognized by law. Kelly v. Lehmann, 297 Ill. 33, 130 N.E. 375; Kulik v. Kapusta, 303 Ill. 208, 135 N.E. 402; Bane v. Pritchett, 223 Ill.App. 617. So when the mortgagee received a quitclaim deed from the holder of the equity of redemption, it did one of two things, (1), it took the title as additional security, (as it insists), and, if so, its title was still only that of a mortgagee, or (2), it took the fee and merged its mortgage therein and then and thereby put an end to its lien.

But if it was its intention to achieve (1), i. e., remain a mortgagee, it could later perfect its title and wipe out the equity of redemption only by foreclosure,—for, on its own admission, its title was still that of a mortgagee, and its rights and remedies were only those fixed by the Illinois statute. Ill.Rev.Stat. C. 95, Sec. 23. That Act reads: "No real estate within this state, shall be sold by virtue of any power of sale, contained in any mortgage, trust deed or other conveyances in the nature of a mortgage, executed after the taking effect of this act; but all such mortgages, trust deeds or other conveyances in the nature of a mortgage, shall only be foreclosed, in the manner provided for foreclosing mortgages containing no power of sale; and no real estate shall be sold to satisfy any such mortgage, trust deed or other conveyance in the nature of a mortgage, except in pursuance of a judgment or decree of a court of competent jurisdiction."

Thus it is expressly provided that a mortgage or "other conveyances in the nature of a mortgage" shall be foreclosed only in the "manner provided for foreclosing mortgages", and that "no real estate shall be sold to satisfy any such mortgage * * * or other conveyance in the nature of a mortgage, except in pursuance of a judgment or decree of a court of competent jurisdiction." The purpose of this statute is to prevent sales of the equity of redemption and no scheme or device to evade the statute or circumvent it by provision depriving the debtor of his equity of redemption will be upheld. De Voigne v. Chicago T. & T. Co., 304 Ill. 177, 136 N.E. 498, 79 Am.Dec. 371; Knox v. Hunter, 150 Ill.App. 392. The equity of redemption exists by virtue of the statute, not by virtue of the mortgage. Strause v. Dutch, 250 Ill. 326, 95 N.E. 286, 35 L.R.A.,N.S., 413; Chicago Sav. Bank & T. Co. v. Coleman, 283 Ill. 611, 119 N.E. 587. So if the quit-claim deed was taken, not in satisfaction of the debt, but, as plaintiff contends, as additional security, plaintiff's rights were the same after receiving the deed as before. It still had only a conveyance in the nature of a mortgage; its title was still only security for the debt and could be perfected, under the quoted statute, only by foreclosure in a court of competent jurisdiction.

But this it never did; rather, it treated its title not as an unforeclosed mortgage, but as the fee simple. It even conveyed the property with warranty of such title. Consequently it must fall into alternative (2) above, for by its actions, it has unequivocally and emphatically dealt with the property as its undisputed unincumbered owner. It must be held legally to have done what it professes not to have done but what it, by its acts, has actually done, when those acts are considered and construed in the light of the Illinois statute,—accepted the title in fee, merged its mortgage in such fee and forever discharged it. Bradley v. Lightcap, 202 Ill. 154, 67 N.E. 45, reversed on other grounds, 195 U.S. 1, 5, 24 S.Ct. 748, 49 L.Ed. 65; Forthman v. Deters, 206 Ill. 159, 69 N.E. 97, 99 Am.St.Rep. 145. This is only another instance of proof of the wisdom of the adage that one may not eat his cake and have it too.

A merger occurs when the mortgagee acquires title to the property mortgaged, either from the mortgagor or his grantee. Weiner v. Heintz, 17 Ill. 259; Shinn v. Fredericks, 56 Ill. 439; First Nat. Bank of Chrisman v. Watson, 277 Ill. 186, 115 N.E. 156; Home Bldg. & Loan Ass'n of

Paris v. Gaumer, 269 Ill.App. 196. The fundamental principle lying behind this doctrine is that a man can not be both debtor and creditor with respect to the same debt at the same time, and when a situation arises where the hand that is obliged to pay the debt is the same hand that is entitled to receive it, the debt is extinguished. Wright v. Anderson, 62 S.D. 444, 253 N.W. 484, 487, 95 A.L.R. 81.

Thus in Woodward v. McCollum, 16 N. D. 42, 111 N.W. 623, the court held that when the mortgagee conveyed his entire interest in the land to third persons without mentioning the mortgage, his interest became merged in the fee title. And in Ames v. Miller, 65 Neb. 204, 205, 91 N.W. 250, 253, the court said: "It is quite obvious that as to appellee's grantor, after professing to convey the entire estate to his grantee, and executing an instrument to that effect, this would be conclusive on the question of merger, and no intention to keep the estates separate could be inferred, but on the contrary, the merger would be held irrevocably to have taken place." See also Pearson v. Bailey, 180 Mass. 229, 62 N.E. 265; James v. Morey, 2 Cow., N.Y., 246, 14 Am.Dec. 475; Mulligan v. Farmers' Nat. Bank, 194 Minn. 451, 260 N.W. 630; Woodward v. McCollum, 16 N.D. 42, 111 N.W. 623; James v. Newman, 147 Iowa 574, 126 N.W. 781; Thomas v. Simmons, 103 Ind. 538, 2 N.E. 203, 3 N.E. 381.

In Novak v. Kruse, 288 Ill. 363, 123 N. E. 519, 520, the mortgagee took a quitclaim deed from the mortgagor. After default, mortgagee recorded its deed, took possession of the property and then conveyed it by warranty deed. The court declared the mortgage debt extinguished, saying: "By its deed the association covenanted that the property was clear and free from all incumbrance. * * * We are convinced that the quitclaim deed was given by Ayres (mortgagor) to the association (mortgagee), with authority to record the same and take title to the property on default of payments under the bond, and that when the quitclaim deed was recorded the title passed to the association. * * * This is further borne out by the fact * * * and it recited in its warranty deed to James Novak and in the resolution of its board of directors that it owned the premises. This being the clear understanding of the parties to the deed, such must be the effect of the instrument." And, in Lyman v. Ged-

ney, 114 Ill. 388, at page 406, 29 N.E. 282, at page 286, 55 Am.Rep. 871, the court held: "Objection is urged that a mortgage made by Broomfield to Sizer March 2, 1842, is not shown to have been satisfied; but it is proved that Broomfield, after executing the mortgage, conveyed the fee to Sizer, the mortgagee, and W. H. Cushman, and that Sizer subsequently conveyed to Cushman. That extinguished the mortgage." "Obviously, one cannot hold a mortgage on his own property." Tabero v. Sutkowski, 286 Ill.App. 225, at page 232, 3 N.E.2d 115, at page 118. A mortgagee will lose his right to sue by so dealing with the mortgaged property as to put it out of his power to restore the property upon a tender of full payment. 3 Jones on Mortgages (8th Ed.), Sec. 1582, p. 16.

I think defendants should prevail.